

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

**NO. PD-0519-13**

**TRACY BLAINE FRANCIS, Appellant**

**v.**

**THE STATE OF TEXAS**

**ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
FROM THE FIRST COURT OF APPEALS
HARRIS COUNTY**

PRICE, J., delivered the opinion of the Court in which MEYERS, WOMACK, KEASLER, HERVEY, COCHRAN and ALCALA, JJ., joined. KELLER, P.J., and JOHNSON, J., concurred in the result.

**O P I N I O N**

A jury convicted the appellant of aggravated robbery and assessed his punishment, enhanced with one prior felony conviction, at seventy-five years' imprisonment. On appeal, the appellant argued that the prosecutor willfully violated a pre-trial discovery order and that the trial court erred in failing to exclude from jury consideration the evidence that was wrongfully withheld from his court-ordered pre-trial scrutiny. The court of appeals held,

with one justice dissenting, that the trial court did not abuse its discretion in concluding that the prosecutor's violation of the discovery order was not willful and that exclusion of the evidence was, therefore, unnecessary.[1] We granted the appellant's petition for discretionary review in order to examine this holding. We now affirm.

## FACTS AND PROCEDURAL POSTURE

### At Trial

The indictment alleged that the appellant robbed Deborah Thomas, a woman with whom he was living, by threatening her and placing her in fear of imminent bodily injury and death, and that he "used a deadly weapon, namely, A KNIFE."[2] Three and a half months before trial, the trial court signed a discovery order that required the State, *inter alia*, to provide the defense with an opportunity to "[i]nspect . . . all physical objects to be introduced as part of the State's case [and] [a]ll weapons . . . seized or acquired by the State or its agents in the investigation of the alleged offense." On the first day of a three-day trial, after the jury had been selected and the trial court had taken a break for lunch, the appellant's counsel noticed a large machete among the physical items the State intended to introduce at trial. When the proceedings reconvened after lunch, the appellant immediately complained to the trial court that "what is in our pleadings is a knife, nothing about a machete." He objected

---

[1] *Francis v. State*, __ S.W.3d __, 2013 WL 1694854 (Tex. App.—Houston [1st Dist.] 2013).

[2] *See* TEX. PENAL CODE §§ 29.02(a)(2), 29.03(a)(2).

to its introduction into evidence because "that is not the knife that they're going to talk about that is the subject of the indictment." The prosecutor replied, "There's two knives that were used that night, this one and another one." The trial court issued a limine order requiring the parties to approach the bench before making any mention of the machete to the jury.

Trial then commenced with the testimony of a policeman and a counselor in the family violence section of the Houston Police Department, both of whom described the injuries that Thomas suffered on the night of the robbery in the apartment in which the appellant and Thomas were living. Neither witness mentioned the machete during direct examination. On cross-examination, both testified that Thomas made no claim to them that she had been threatened with a knife of any kind, and the police recovered no knife from the scene.

On the morning of the second day of trial, the appellant filed a motion for continuance, complaining that the preceding day had been "the first time defense counsel had been made aware of a machete in the State's possession or of the State's intention to introduce it into evidence." In his prayer, the appellant asked the trial court "to allow investigation into the machete . . . to formulate a defensive strategy." The trial court signed an order granting the motion, adding a notation that the "matter [was] taken up and [the] issue resolved[,]" and that defense "counsel [was] given [an] opportunity to inspect [the machete] and confer with his client." On the record, the appellant's counsel acknowledged that he had indeed "had a chance to inspect the machete in question and [had] had ample

opportunity to speak to his client about it and prepare for cross-examination." But counsel nevertheless informed the trial court that this access to the machete "doesn't eliminate the objections that will be made." The limine order remained in effect as Thomas took the witness stand.

Thomas testified that the appellant was acting strangely and had apparently been taking drugs on the night of the robbery. He straddled her on her bed and beat her about the head with his fists, inflicting between twenty and thirty blows and knocking out four of her teeth. She wavered in and out of consciousness during this ordeal, but she remembered that at one point the appellant also threatened her with a small knife ("like a pocketknife") and with the machete, both of which she kept at her bedside for protection. Eventually the appellant took the money he knew she kept in her bra and left the apartment, at which point she was able to call the police.

When Thomas came to testify specifically about the machete, the jury was retired and the trial court asked the prosecutor to explain why the machete had not been made available to defense counsel within the terms of the discovery order. She explained:

> [PROSECUTOR]: I brought the machete as evidence. And when I was showing the defense counsel all of the evidence that I was intending to offer in this trial, that's when he mentioned that he hadn't seen the machete. I did receive the machete from Ms. Thomas when I went to interview her in preparation for trial. That is the first time I knew about it.
>
> THE COURT: When was that?

[PROSECUTOR]: That was in -- I don't remember.

THE WITNESS:  Last month.

[PROSECUTOR]: Yeah.  It was before the last trial setting, I believe. So far in advance.  It's been in my possession since that time.  I honestly didn't know that the defense didn't know about the machete.  I thought that it was in the offense report, but it wasn't.

The trial court again recounted for the record that it had granted the motion for continuance that morning to allow inspection of the machete.  The appellant's counsel acknowledged as much, but argued that the machete should be excluded from evidence anyway:

[DEFENSE COUNSEL]:  And just, so I'm clear on this, the State was aware of the discovery order and was aware that it had an affirmative duty to turn over any further evidence that was applicable to the discovery order.  And if this machete was found in September and the order was granted in July and we just found out about it yesterday, then this is a violation of that discovery order under [Article] 39.14.  And we'd request then that the machete be inadmissible because of that.

Moments later, the prosecutor again explained that she had mistakenly believed that the defense was aware of the existence of the machete because it was mentioned in the State's file.

[PROSECUTOR]: When [Thomas] talked to Ms. Logan, who was the prosecutor in the court before me, she told Ms. Logan about the machete as well, which was in Ms. Logan's notes, which was in the file that was open to defense counsel.  I don't know if it was ever brought to their attention because I haven't been on this case since the beginning.  I just -- and it was my mistake to assume that they knew about it.

And then -- that's it.

THE COURT: So, there are notes -- is it work product notes or notes

that were available?

> [PROSECUTOR]: It was her notes. I don't know if she had them in a work product folder or not. I don't know that. But they were notes in the file.

When the trial court asked defense counsel how the belated revelation of the machete surprised them, counsel responded:

> [DEFENSE COUNSEL]: Well, Judge, we would contend that the surprise that is being brought on the defense by this has affected our ability to cross-examine the responding officer and the counselor who were up on the stand the other day. Because it is part of our defensive theory that the defendant did not have a weapon. And now, for there to be a second weapon alleged, has affected our ability to cross-examine.

> THE COURT: But you knew about the machete before those people testified, right? Because as I recall, before the jury came back in –

> [PROSECUTOR]: I showed the defense -- I showed defense counsel all of the exhibits I intended to use during the lunch break after we -- we picked the jury.

Defense counsel objected that, even after learning of the existence of the machete from the prosecutor after jury selection, they had been given no notice that the State intended to prove that it was the knife allegedly used to threaten Thomas during the robbery. The State refuted this contention:

> [PROSECUTOR]: That's not true. I told them yesterday that -- that -- I told -- I said yesterday that this was the allegation that was being made, that [the appellant] had the machete on the bed next to her.

The trial court made no express ruling on the willfulness of the prosecutor's conduct but did decline to exclude the machete from evidence and allowed Thomas to testify about it. On

cross-examination, Thomas could not remember whether she had mentioned the machete in her 9-1-1 call or to the emergency responders or the police. During his final arguments, the appellant's counsel argued that the State had failed to prove the particular theory of aggravated robbery it had alleged, urging the jury to acquit the appellant for lack of evidence that the appellant ever threatened Thomas or placed her in fear of death or imminent bodily injury—*at all*, much less *with a knife*—as alleged in the indictment.

## On Appeal

In the court of appeals, the appellant argued that the trial court erred in failing to exclude evidence of the machete on account of the prosecutor's willful disregard of the trial court's discovery order. The First Court of Appeals rejected this point of error, reasoning that "the trial court could reasonably conclude from the prosecutor's statements that the State did not willfully withhold the machete in violation of the discovery order," and that, therefore, "the trial court did not err in admitting the machete into evidence over [the appellant's] objection to the discovery order violation."[3] Justice Keyes dissented, however, opining that the circumstances of this case "are akin to the circumstances in *Oprean*, which the Court of Criminal Appeals determined required the exclusion of evidence."[4] Because of this disagreement among the justices in the court of appeals, we granted the appellant's

---

[3]  *Francis*, 2013 WL 1694854, at *5.

[4]  *Id*. at *17 (Keyes, J., dissenting) (citing *Oprean v. State*, 201 S.W.3d 724, 728 (Tex. Crim. App. 2006)).

petition for discretionary review.[5]

## THE LAW

"[E]vidence willfully withheld from disclosure under a discovery order should be excluded from evidence[.]"[6]  Because exclusion of evidence in this context is in the nature of a court-fashioned sanction for prosecutorial misconduct, whether the trial court should exclude evidence on this basis has been made to hinge on "whether the prosecutor acted with the specific intent to willfully disobey the discovery order[.]"[7]  Extreme negligence or even recklessness on the prosecutor's part in failing to comply with a discovery order will not, standing alone, justify the sanction of excluding relevant evidence.[8]

An appellate court must review a trial court's ruling to exclude evidence for willful prosecutorial defiance of a discovery order under an abuse-of-discretion standard, deferring to any trial-level ruling that falls within the zone of reasonable disagreement.[9]  We have adopted a similar appellate posture in this context to that which we have applied to review

---

[5]

TEX. R. APP. P. 66.3(c), (e).

[6]

Hollowell v. State, 571 S.W.2d 179, 180 (Tex. Crim. App. 1978).

[7]

Oprean, 201 S.W.3d at 727.

[8]

State v. LaRue, 152 S.W.3d 95, 97 (Tex. Crim. App. 2004).  Negligent or reckless failure to comply with a discovery order *may* call for the exclusion of evidence if the appellant suffers some disability by virtue of the lack of discovery and the trial court takes no timely corrective action.  *See id*. at 100 (Cochran, J., concurring);  *Oprean*, 201 S.W.3d at 728-30 (Cochran, J., concurring).

[9]

Oprean, 201 S.W.3d at 726.

pre-trial motions to suppress evidence: An appellate court must pay almost absolute deference to the trial court's findings of fact based on determinations of credibility or demeanor.[10] And in the absence of any specific findings of fact from the trial court (either oral or written) spread on the record, a reviewing court must assume that the trial court resolved all fact issues in a way that is consistent with its ultimate ruling, so long as those presumed findings of fact are supported by the record.[11]

## ANALYSIS

### Exclusion as a Function of Prosecutorial Willfulness

We have never specified whether the issue of a prosecutor's willfulness is a question of fact or, instead, a mixed question of law and fact. Nor need we specify today. Even assuming that it is a mixed question of law and fact, here that mixed question would ultimately turn on the credibility of the prosecutor's explanations and of her assertions that she was not even aware until the morning of trial that the discovery order had not been

---

[10] *Id*. (citing *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997)). In the context of motions to suppress, we have further held that "[a]ppellate courts may review the legal significance of undisputed facts *de novo*." *Robinson v. State*, 377 S.W.3d 712, 723 (Tex. Crim. App. 2012) (citing *State v. Sheppard*, 271 S.W.3d 281, 291 (Tex. Crim. App. 2008)). We did not address this question in *Oprean*—perhaps because of language in *Guzman* to the effect that "[a]n appellate court's review of a trial court's evidentiary rulings generally does not involve an 'application of law to fact question' or a 'mixed question of law and fact.'" *Guzman*, 955 S.W.2d at 89. Even assuming that the question of a prosecutor's willfulness in violating a discovery order represents the sort of "mixed question" that does not typically arise in the appellate review of ordinary evidentiary rulings, *see* text, *post*, in *this* case that mixed question turned on the trial court's assessment of the prosecutor's credibility, to which, under *Oprean*, a reviewing court owes "almost total deference[.]" *Oprean*, 201 S.W.3d at 726.

[11] *Id*. (citing *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000)).

satisfied. Under these circumstances, we owe almost absolute deference to the trial court's implicit conclusion that the prosecutor's conduct was less than willful.

That is not to say that the facts of this case could not support a conclusion that the prosecutor in fact acted willfully. After all, what the discovery order explicitly required was that the appellant be given a timely opportunity to "inspect" the State's physical evidence, including any weapons uncovered in its investigation. Even if the prosecutor believed in good faith that the appellant was aware of the *existence* of the machete, since it was mentioned in the State's file to which the defense was granted access, and even if she was only negligent with respect to whether the previous prosecutor's mention of the machete ("Ms. Logan's notes") was undisclosed work product, she was still, strictly speaking, in violation of the discovery order. This is because, having secured the machete herself from Thomas and kept it in her possession until the opening day of trial,[12] the prosecutor should certainly have realized that the appellant had been deprived of the opportunity to *inspect* it—even if the appellant's counsel was aware of the fact of its existence from having perused

---

[12]

The version of Article 39.14 that was in place at the time of the appellant's trial contained no explicit language imposing a continuing duty on prosecutors to disclose discoverable matters that come into the State's possession only after the issuance of the discovery order itself. Indeed, although the recent revision to Article 39.14, the so-called Michael Morton Act, has for the first time included a duty of continued disclosure, that duty pertains only to exculpatory matters. *See* Acts 2013, 83rd Leg., ch. 49, § 2, p. 107-08, eff. Jan. 1, 2014 (adding Subsections (h) and (k) to TEX. CODE CRIM. PROC. art. 39.14, requiring the State to disclose "any additional document, item, or information" of an "exculpatory, impeachment, or mitigating" nature). Nevertheless, the particular discovery order in the instant case contained what amounts to its own provision for continuing discovery: "The State is Ordered to furnish the above for inspection and copying 10 working days before trial, or as soon as reasonably practicable after any such information comes to their knowledge, whichever is earlier."

the State's file. Moreover, it is not altogether apparent that any mention of the machete in the State's file would have served to alert the appellant's counsel that the machete was the very "KNIFE" alleged in the indictment. From these circumstances, the trial court could rationally have concluded that, despite her protestations to the contrary, the prosecutor's behavior constituted "a calculated effort to frustrate the defense[,]" as in *Oprean*.[13]

But the trial court was not obliged to draw that conclusion. That the prosecutor *should* have been aware that her exclusive possession of the machete prevented the appellant from inspecting it, as the discovery order required, does not necessarily mean that she was aware of that fact. Her conduct may have been only reckless, or merely negligent, in that regard.[14] As we said of the prosecutor in *LaRue*, although the prosecutor's conduct in retaining the machete in this case may itself have entailed a "willful choice," that does not necessarily establish that she harbored a conscious objective to thwart the discovery order.[15] The prosecutor effectively denied any such conscious objective,[16] and it was no abuse of

---

[13] *Oprean*, 201 S.W.3d at 728.

[14] *LaRue*, 152 S.W.3d at 97.

[15] *Id*.

[16] First, the prosecutor asserted that, when she was showing the appellant's counsel her evidence after jury selection, "that's when he mentioned that he hadn't seen the machete." She then informed the trial court that she herself had been the one to "receive the machete from Ms. Thomas when I went to interview her in preparation for trial." Her next statement was: "That is the first time I knew about it." It is unclear what the antecedent to the word "it" is in this last sentence. Does it refer to the machete or to the fact that the appellant's counsel "hadn't seen the machete" until after jury selection?

discretion for the trial court to credit her denials (as we must assume it did, absent any express finding with respect to willfulness) and, on that basis, reject the inference that "the prosecutor's conduct here was a calculated effort to frustrate the defense."[17]

As did the majority in the court of appeals,[18] we think that *Oprean* is distinguishable. It was undisputed that, on the eve of the punishment phase of Oprean's DWI trial, the prosecutor assured defense counsel that the only evidence she planned to introduce the next day were judgments and sentences from his previous convictions.[19] Notwithstanding that assurance, the next day she offered a videotape of one of Oprean's prior offenses that fell squarely within the ambit of the trial court's pre-trial discovery order.[20] The only explanation the prosecutor proffered for this lapse was that Oprean had failed to request notice of extraneous offenses that the State intended to offer at the punishment phase of trial, in

---

The trial judge was in the best position to resolve this ambiguity, and we must presume that he took her to mean the latter. This is reinforced by the prosecutor's subsequent assertions that she "honestly didn't know that the defense didn't know about the machete[,]" and that "it was [her] mistake to assume that they knew about it." From these statements, the trial court could infer that the prosecutor's failure to reveal the existence of the machete was not purposeful.

[17] *Oprean*, 201 S.W.3d at 728.

[18] *Francis*, 2013 WL 1694854, at *5.

[19] *Oprean*, 201 S.W.3d at 725, 727.

[20] *Id*. at 725.

keeping with Article 37.07, Section (3)(g) of the Code of Criminal Procedure.[21] But the discovery order was in no way contingent on such a request.[22] Under these objective facts, and observing that "the validity of the explanation offered by the prosecutor is a relevant factor that should be considered when determining willfulness[,]" we concluded that the only thing the trial court could rationally have concluded was that the prosecutor's conduct was consciously intended to "frustrate" what she knew to be the clear dictates of the pre-trial discovery order.[23]

The appellant argues that there are similar objective circumstances in this case from which it can only be concluded that the trial court abused its discretion to credit the prosecutor's denials of a conscious objective to thwart the discovery order. Specifically, the appellant argues that the prosecutor in this case also failed to timely disclose the existence of audio recordings of telephone conversations that the appellant had while he was awaiting

---

[21]

*Id*. at 725, 727. *See* TEX. CODE CRIM. PROC. art. 37.07(3)(g) (notice of intent to introduce evidence of extraneous misconduct at the punishment phase of trial "shall be given" upon "timely request" of the defendant).

[22]

*Id*. at 728.

[23]

*Id*. *See* George E. Dix & John M. Schmolesky, 42 TEXAS PRACTICE: CRIMINAL PRACTICE AND PROCEDURE § 27:83, at 585 (3d ed. 2011) ("The issue in *Oprean* seems to have been whether the trial judge was required to find that the prosecutor did not in fact believe her offered explanation that she thought the [discovery] order did not cover evidence to be introduced only at punishment. Although the opinion does not explicitly say so, the majority appears to have concluded the trial judge could only have found that despite her protestations, the prosecutor in fact knew the order required production of items to be offered at punishment and nevertheless failed to produce one item she intended to offer at that stage.")

trial in the Harris County Jail that were relevant at the punishment phase of trial.[24] We agree that proof of a consistent pattern of failure to comply with a discovery order is another relevant circumstance to take into account in gauging the willfulness, *vel non*, of the prosecutor's conduct. But here again, the prosecutor offered a plausible explanation to the trial court why her failure to disclose the phone recordings sooner was not willful.

Thomas testified again at the punishment phase of trial. The prosecutor asked her whether, while the appellant was in jail, he had ever threatened her on the telephone. Before Thomas could answer, the appellant objected that he had not been notified of the State's intent to introduce evidence of such extraneous misconduct as required by Article 37.07(3)(g).[25] A bench conference ensued in which the prosecutor explained that she had learned of the phone call containing the threat only on the Friday before trial began, and she notified the appellant's counsel within twenty minutes of her discovery, providing the defense with a copy. When the appellant remarked that the recordings were voluminous, the prosecutor explained that she had also informed him that she was interested only in the particular phone conversation between the appellant and Thomas, which was the first call on

---

[24] The trial court's discovery order also encompassed disclosure of "[a]ll video and tape recordings, which contain the defendant or his/her voice."

[25] *See* note 21, *ante*. In a separate point of error on appeal, the appellant complained that the trial court erred to admit Thomas's testimony about the telephonic threat in light of the State's violation of Article 37.07(3)(g). The court of appeals rejected this contention, *Francis*, 2013 WL 1694854, at *8-10, and it is not before us in this petition for discretionary review.

the recording and lasted no more than twenty minutes.  On this representation, the trial court overruled the appellant's objection and allowed Thomas to testify to the substance of the threat.  Neither the State nor the appellant attempted to introduce the recording itself.

The record does not reveal why the prosecutor could not have learned of the phone recording sooner than the Friday before trial, or whether she had been aware of the appellant's threat from some other source, such as a pre-trial interview with Thomas.  But the appellant did not challenge the prosecutor's assertion that she informed him of the recording as soon as she discovered it.  Nor did he ask the trial court to reconsider its guilt-phase ruling on the admissibility of the machete in light of the relevance of this separate incident (if any) to demonstrate the prosecutor's evident willfulness.[26]  But even had he done so, the trial court would have been entitled to credit the prosecutor's undisputed account that she disclosed the existence of the jail recordings, and provided the appellant with a copy, at her earliest opportunity.  Even considering this punishment-phase incident in tandem with the prosecutor's failure to timely tender the machete for inspection does not ineluctably

---

[26]
The appellant did not expressly complain at the punishment phase of trial that the prosecutor had once again violated the trial court's discovery order, much less did he request the trial court to revisit its guilt-phase ruling on the prosecutor's willfulness, perhaps to grant a mistrial.  Without such a request, it is far from clear that the punishment-phase incident in this case was available to inform appellate review of the propriety of the trial court's ruling that the machete was admissible at the guilt phase of trial.  *See, e.g.*, *Dragoo v. State*, 96 S.W.3d 308, 313 (Tex. Crim. App. 2003) ("As a general rule, an appellate court reviewing a trial court's ruling on the admission or exclusion of evidence must do so in light of the arguments, information, and evidence that was available to the trial court at the time it ruled.");  George E. Dix & John M. Schmolesky, 43B TEXAS PRACTICE: CRIMINAL PRACTICE AND PROCEDURE § 56:134, at 459-60 (3d ed. 2011) (same) .

establish willfulness—to the exclusion of a legitimate inference of negligence or recklessness—as did the objective facts in *Oprean*. We cannot say that the trial court here abused its discretion.

## Exclusion as a Function of Due Process

In *LaRue*, we had no occasion to address "what remedies are available when the State's conduct is of a less culpable nature" than willfulness.[27] Judge Cochran joined the Court's opinion but, along with two other judges, she also observed that, "[h]ad the defendant shown that he was unable to prepare a defense . . . in the time remaining before trial, I would be less concerned about the 'willfulness' of the prosecutor and more concerned about the due process rights of the defendant."[28] Similarly, in a concurring opinion in *Oprean*, while skeptical of the Court's conclusion that the prosecutor's violation of the discovery order was willful, Judge Cochran nevertheless agreed "that the trial court abused its discretion in admitting the videotape in violation of the discovery order without also ensuring the defendant's right to due process notice."[29] In *Oprean*, the trial court did not so much as "declare a short recess for the defense (and the trial judge) to view the videotape and

[27] *LaRue*, 152 S.W.3d at 100.

[28] *Id.* (Cochran, J., concurring, joined by Meyers and Holcomb, JJ.).

[29] *Oprean*, 201 S.W.3d at 729 (Cochran, J., concurring, joined by Keller, P.J.).

prepare for the State's offer."[30]  Here, by contrast, the trial court did grant a continuance, and the appellant confirmed on the record that the delay was sufficient to allow him to *inspect* the machete prior to its admission into evidence and to consult about it with counsel—which was, after all, the only thing that the discovery order explicitly guaranteed him.  Moreover, we are unpersuaded that the appellant was disadvantaged in any other material way by his belated receipt of notification of the full significance the State would attribute to the machete (*i.e.*, that it was the "KNIFE" alleged in the indictment).

First of all, the appellant has not shown that he was prejudiced pre-trial.  For example, he does not contend that his ignorance of the machete caused him to forgo a favorable plea bargain.  Nor would the record support such a contention.  There is no indication that the State ever offered the appellant such a plea bargain, much less that he would have accepted the offer had he only known about the machete in time.

Secondly, it is not evident how the tardy revelation of the machete's role in the State's case substantially impaired the appellant's actual defensive posture at trial.  He was still able to impeach Thomas substantially, highlighting the fact that she failed to mention the existence of a knife (*of any kind*, much less one as indelible as a machete) either during her initial call to 9-1-1, or to the first emergency responders, the investigating police officers, and the family violence counselor.  We seriously doubt it was the machete (which, the evidence

---

[30]  *Id*. at 730.

showed, was *not* recovered by the police at the scene) that ultimately tipped the balance for the jury, causing it to believe Thomas's testimony that the appellant did in fact threaten her with a knife when it otherwise would not have.

Nor does the appellant otherwise explain to our satisfaction how his defensive posture could have materially improved had he been alerted to the significance of the machete earlier. To be sure, he does complain that the sight of the machete was so frightening that it could only have prejudiced the jury against him. And indeed, the machete was described on the record (at least by appellant's counsel, during Thomas's cross-examination) as "giant, big, [and] scary[.]" Nevertheless, despite having inspected the machete during the continuance, the appellant neither objected at trial nor argued on appeal that it should have been excluded from evidence because its probative value was substantially outweighed by its potential to unfairly prejudice the jury.[31] The late disclosure of the existence and significance of the machete did not prevent the appellant from lodging such an objection.

Accordingly, even under Judge Cochran's view that due process would oblige a trial court to exclude evidence that was not timely revealed under a pre-trial discovery order, without regard to the willfulness of the prosecutor, if the resulting lack of timely notice would substantially impair the defendant's ability to investigate and prepare his defense, we do not think the trial court erred in allowing the State to introduce the machete into evidence

---

[31] *See* TEX. R. EVID. 403 ("Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice[.]").

on the facts of this case.

## CONCLUSION

We therefore affirm the judgment of the court of appeals.


DELIVERED:     April 30, 2014
PUBLISH