**Affirmed and Opinion Filed March 10, 2015**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-14-00041-CR

**EDGAR JUVENTION BARRIENTOS, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 401st Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 401-80994-07**

## MEMORANDUM OPINION
Before Justices Francis, Lang-Miers, and Whitehill
Opinion by Justice Francis

A jury convicted Edgar Juvention Barrientos of aggravated sexual assault, and the trial court assessed punishment at fifteen years in prison. In two issues, appellant challenges the sufficiency of the evidence to support his conviction and the admission of photographs. We affirm.

In December 2006, A.M.G. needed someone to prepare food for her birthday party and hired a woman she met through a neighbor. The woman and her two children came to the party, and the woman's husband later picked them up. The woman's husband was identified as appellant.

After her guests left the party, at about 11 p.m. or midnight, A.M.G.'s roommate called saying she forgot her key and would need to be let in the door when she got off work. About

forty minutes later, A.M.G. said there was a knock at the door. Assuming it was her roommate, A.M.G. answered without first checking to see who it was. When she opened the door, appellant grabbed her by the throat, threw her on the sofa, and closed the door. A.M.G. asked appellant why he was hitting her and offered him her jewelry and credit cards so he would not hurt her. Appellant told her he was coming for her and wanted to "have sex" with her. He tore off A.M.G.'s clothes, threw her on the floor, and told her to cooperate. A.M.G. said appellant threatened to kill her and told her he had raped and killed two fifteen-year-old girls in Guatemala. A.M.G. believed appellant was going to kill her and said she was fighting for her life as he hit her and threw her around the apartment.

According to A.M.G., appellant inserted three fingers into her vagina, licked her breasts and vagina, and put his tongue inside her vagina. The assault lasted a long time, and at one point as she tried to escape, he told her if she made "one wrong move," he would "finish" her. Eventually, appellant wanted to smoke a cigarette, and A.M.G. suggested he light it from the stove in the kitchen. When appellant went into the kitchen, A.M.G. ran out the door naked and screaming and banged on the door of a neighbor's apartment. The neighbor's son answered, covered her in his jacket, and called 911. Officers were dispatched to the scene, and appellant was arrested that night. A.M.G. was transported to the hospital, where she underwent a sexual assault examination and police took photographs of her injuries. For reasons not developed in the record, the police did not develop the film over the next seven years, and the prosecutor found it in the evidence box on the first day of trial and had it developed. Fifteen photographs of A.M.G. and two of appellant, one without his shirt on, were admitted over a defense objection that they were not timely produced. The photographs of A.M.G. depicted bruises, scratches, and lacerations to A.M.G.'s arms, legs, shoulder, and back.

On cross-examination, A.M.G. acknowledged telling police she saw a tattoo on appellant's arm that night but did not mention he also had a large mole or birthmark on his side that was depicted in one of the photographs. She also acknowledged the photographs of her did not reveal any injuries to her neck where she said appellant had grabbed her or any marks on her face where she said appellant hit her with his open hand. Finally, she acknowledged telling the police that at one point, she told appellant he was "beautiful" and did not need to use force. She explained, however, that she would have said anything to stop appellant from hitting her.

Dr. Rajiv Gala performed the sexual assault examination of A.M.G. According to Dr. Gala, A.M.G. told him the man grabbed her, ripped off her clothes, and kissed her on the face and "pubic hair area." She told Dr. Gala there was no penile penetration. During his examination, he noticed a number of bruises and scratches along A.M.G.'s arms and legs as well as scratches and lacerations on her shoulder and back areas. He testified the injuries documented in his report were consistent with the injuries depicted in the photographs. The report was admitted into evidence. Dr. Gala took samples for DNA testing but was not surprised no DNA was recovered because of the "relatively minimal contact" and no ejaculation or "internal penetration into the vagina." Additionally, he said, A.M.G. reported she urinated before coming to the hospital. He explained that wiping after urination can remove DNA from the pubic area.

In his second issue, appellant contends the evidence is legally insufficient to support the verdict. In reviewing a challenge of the sufficiency of the evidence, we examine the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). This standard accounts for the factfinder's duty to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic to ultimate facts. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

To obtain a conviction for aggravated sexual assault, the State was required to prove appellant intentionally or knowingly caused the penetration of A.M.G.'s sexual organ with his fingers or mouth, without A.M.G.'s consent, and by acts or words placed A.M.G. in fear that death or serious bodily injury would be imminently inflicted on her. *See* TEX. PENAL CODE ANN. § 22.021(a)(1)(A)(i), (a)(2)(A)(ii) (West Supp. 2014).

A.M.G. testified appellant forced his way into her apartment, tore off her clothes, and penetrated her vagina with his fingers and mouth. During this encounter, he hit her repeatedly and threw her around the apartment, all while threatening to kill her. A.M.G.'s testimony established each element of the offense and was alone sufficient to support appellant's conviction. *See* TEX. CODE CRIM. PROC. ANN. art. 38.07(a) (West Supp. 2014) (stating that uncorroborated testimony of victim alone sufficient to support conviction if victim informs person, other than defendant, of offense within year of the date it occurred).

Appellant asserts A.M.G. is not credible because her testimony contained "inconsistencies." Specifically, he argues that A.M.G. recalled appellant's tattoo but not a large birthmark. A.M.G. explained that on the night of the assault, she had struggled with appellant for a long time and her "memory was not working" afterwards. She recalled appellant's face and tattoo and gave the police information so they could find him. On seeing the picture of appellant's birthmark at trial, she said she remembered it. The jury could have believed A.M.G. did not remember every detail immediately after going through a traumatic and violent assault.

Next, appellant asserts an "inconsistency" on the element of consent. Here, appellant argues A.M.G. told him he was "beautiful" and did not need to use force. Additionally, he says, no photographic evidence documents the condition of her apartment supporting her testimony about a struggle. A.M.G. explained her remarks to appellant, saying she did not have the strength to continue to fight him and was trying to stop him from hurting her. The absence of

–4–

photographic evidence of her apartment does not render the evidence insufficient nor does it render A.M.G.'s testimony incredible.

Appellant also asserts the evidence of penetration is insufficient because of the absence of DNA evidence. The evidence showed A.M.G. was penetrated digitally and orally. Given that no penile penetration or ejaculation occurred and because A.M.G. urinated before the examination, Dr. Gala said he was not surprised no DNA was recovered.

Finally, appellant asserts the evidence is insufficient to establish he threatened A.M.G. with death or serious bodily injury. He asserts nothing in the record shows he had any connection to Guatemala or that he killed two girls there. Such a showing, however, was not necessary. What is relevant is A.M.G.'s perception of the threat. She testified that during the assault, appellant grabbed her by the throat, threw her around the apartment, hit her repeatedly in the face and other parts of her body, all the while telling her he would kill her. At trial, she testified she was "fighting for her life," thought he "would kill her," and told police he "wanted to kill me, not just rape me." From this evidence, the jury could have believed appellant placed A.M.G. in fear that death or serious bodily injury would be imminently inflicted on her. Considering all the evidence, we conclude a rational jury could have believed beyond a reasonable doubt that appellant committed aggravated sexual assault. We overrule the second issue.

In his first issue, appellant contends the trial court erred in admitting the photographs of A.M.G.'s injuries because the film was not developed and produced until the second day of trial.

For reasons not clarified in the record, this case was not prosecuted for seven years. The record does show, however, that the prosecutor was unaware of the undeveloped film until the Dallas police arrived on the first day of trial with a "large box of stuff." The film was in the box but no explanation was given as to why the Dallas police did not develop it.

On the second day of trial, the prosecutor had the film developed and tendered a full set to defense counsel. In a hearing outside the presence of the jury, both sides saw the photographs for the first time at the same time. The prosecutor noted the police report and other discovery that had been handed over to appellant "mentioned multiple times" that photographs were taken, which she asserted put appellant on notice and essentially negated any assertion of "surprise photographs." The trial judge stated "[w]e're not ascribing dark and nefarious motives" to the DA's office and further said he was not suggesting the prosecutor had "done anything inappropriate." Defense counsel agreed.

A.M.G. then testified about the photographs, again without the jury present. Appellant objected they were "untimely provided." Of the forty photographs, the State offered twenty-three into evidence. Ultimately, the trial court ruled admissible fifteen photographs depicting A.M.G. and her injuries and two photographs of appellant, one showing his tattoo and birthmark. The trial court excluded two other photographs of appellant, including one A.M.G. said depicted where she had bitten appellant that night. At no point did defense counsel indicate he needed a postponement or continuance to prepare in light of the ruling. During cross-examination of A.M.G., defense counsel used the photographs to suggest A.M.G. was lying about the assault because the photographs did not show injuries to her face or neck.

On appeal, appellant asserts the evidence was a "surprise" that caused him actual harm and relies on cases holding that "[e]vidence that is willfully withheld from disclosure under a discovery order should be excluded from evidence." *See Henricks v. State*, 293 S.W.3d 267, 274 (Tex. App.—Eastland 2009, pet. ref'd) (citing *Oprean v. State*, 201 S.W.3d 724, 726 (Tex. Crim. App. 2006); *Osbourn v. State*, 59 S.W.3d 809, 815 (Tex. App.—Austin 2001), *aff'd*, 92 S.W.3d 531 (Tex. Crim. App. 2002)).

Under the line of cases relied upon by appellant, evidence excluded in this context is in the nature of a court-fashioned sanction for prosecutorial misconduct. *Francis v. State*, 428 S.W.3d 850, 854–55 (Tex. Crim. App. 2014). Whether the trial court should exclude evidence on this basis hinges on "whether the prosecutor acted with the specific intent to willfully disobey the discovery order[.]" *Id.* Extreme negligence or even recklessness on the prosecutor's part in failing to comply with a discovery order will not, standing alone, justify the sanction of excluding relevant evidence. *Id.*

There is no discovery order in this case or even a discovery motion ruled on by the judge, and appellant acknowledges as much. Instead, he relies on an implied agreement with the State to produce discovery. Nothing in the record substantiates any such agreement. Further, he offers no support for the claim that an "informal agreement" would be tantamount to an order signed by the judge under the code of criminal procedure. The State has a constitutional duty to disclose exculpatory evidence to the defense, but has no general duty to disclose inculpatory evidence.[1] *Rivera v. State*, 808 S.W.2d 80, 95 (Tex. Crim. App. 1991). Thus, given the absence of any order in this case, appellant has not shown the State had a duty to disclose the photographs.

Even if there had been a violation of a trial court's pre-trial discovery order which caused surprise to appellant, the proper procedure at that point would have been to request a continuance of the trial. *Duff-Smith v. State*, 685 S.W.2d 26, 32 (Tex. Crim. App. 1985); *Massimo v. State*, 144 S.W.3d 210, 215 (Tex. App.—Fort Worth 2004, no pet). The failure to request a postponement or seek a continuance waives any error urged in an appeal on the basis of surprise. *Lindley v. State*, 635 S.W.2d 541, 544 (Tex. Crim. App. [Panel Op.] 1982); *see Oprean*, 201

---

[1] The Michael Morton Act, which creates a general discovery duty, is not implicated in this case because the Act did not take effect until after this case was tried. *See* Act of May 16, 2013, 83rd Leg., R.S., ch. 49 (S.B. 1611), § 2 (codified at TEX. CODE CRIM. PROC. ANN. art. 39.14. (providing the change in law applies to the prosecution of an offense committed on or after the Act's effective date of Jan. 1, 2014). Therefore, we need not consider how the Act might affect this case.

S.W.3d at 730 n.10 (Cochran, J., concurring) ("Thus, the trial court may always exclude the undisclosed evidence, but if he does not, any error in causing 'surprise' to the defense is forfeited on appeal unless the defendant has also requested a postponement or recess."). Appellant did not request a postponement or continuance; thus, error, if any, is waived. We overrule the first issue.

We affirm the trial court's judgment.


Do Not Publish
TEX. R. APP. P. 47.2(b)
140041F.U05

/Molly Francis/
MOLLY FRANCIS
JUSTICE



# Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

EDGAR JUVENTION BARRIENTOS, Appellant

No. 05-14-00041-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 401st Judicial District Court, Collin County, Texas
Trial Court Cause No. 401-80994-07.
Opinion delivered by Justice Francis; Justices Lang-Miers and Whitehill participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered March 10, 2015.