

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-17-00198-CR

The **STATE** of Texas,
Appellant

v.

Primo **TARIN**,
Appellee

From the County Court at Law No. 5, Bexar County, Texas
Trial Court No. 500563
Honorable John Longoria, Judge Presiding

Opinion by:    Karen Angelini, Justice

Sitting:    Karen Angelini, Justice
Rebeca C. Martinez, Justice
Patricia O. Alvarez, Justice

Delivered and Filed:  August 15, 2018

AFFIRMED

In this interlocutory appeal, the State appeals from the trial court's order suppressing "all evidence regarding the blood draw." The State argues the trial court erred in suppressing blood-alcohol test results for the State's alleged violation of a discovery order in the absence of evidence that the prosecution acted with the specific intent to willfully disobey the discovery order. On May 2, 2018, we issued an opinion in this appeal. *See State v. Tarin*, No. 04-17-00198-CR, 2018 WL 2024629 (Tex. App.—San Antonio May 2, 2018, order) (not designated for publication). We explained that the trial court suppressed the blood-alcohol test results because the State had not

complied with trial court's discovery order, and the State had failed to comply with the requirements enunciated under *Brady v. Maryland*, 373 U.S. 83 (1963). *See Tarin*, 2018 WL 2024629, at *6. In our opinion, we explained why the trial court erred in suppressing the evidence pursuant to a *Brady* violation. *See id*. Thus, we turned to whether the trial court erred in suppressing the blood evidence because the State had failed to comply with the discovery order. *See id.* at *7. We concluded that the trial court's findings did not include essential facts necessary to resolve the legal questions raised on appeal. *Id.* Thus, we abated the appeal and remanded the cause to the trial court so that it could make essential findings necessary to resolve the legal issues raised on appeal. On June 1, 2018, the trial court filed supplemental findings. We then reinstated this appeal so that we could determine whether the trial court erred in suppressing the blood evidence for failure of the State to comply with the discovery order.

## BACKGROUND

The record reflects that on September 24, 2015, Primo Tarin was charged by information with the misdemeanor offenses of driving while intoxicated and obstructing a highway. On September 29, 2015, Tarin filed a Motion for Discovery, Production, and Inspection of Evidence. On June 10, 2016, the trial court granted Tarin's motion in part, but denied his request for information relating to "blood, hair, and threads, etc.," with the notation that Tarin should file the "standard discovery order."

On June 20, 2016, Tarin filed the Standing Discovery Order on Copying and Production of Blood Testing Records. The trial court signed the order that same day. In the order, the trial court ordered "the District Attorney's Office and its agent, the forensic laboratory that analyzed the Defendant's blood in the case, specifically, Bexar County Medical Examiner's Office, . . . to digitally copy and digitally produce" a list of certain items, including information and documents relating to the testing of Tarin's blood. The order requires "any evidence within the scope of the

items granted above be provided by the State to the Defendant's attorney's office on or before 5:00 p.m. on the 60th day after this order is signed, or otherwise by mutual agreement." The order further states that it "is continuing and the State will immediately make available to the Defendant's attorney any subsequent discoverable matter within the scope of the above granted items within 48 hours of the time it learns of or obtains such discoverable matter." Further, the order mandated that pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963), "all evidence favorable to the Defendant . . . be produced." Additionally, the order stated that pursuant to Rule 3.09(d) of the Texas Disciplinary Rules of Professional Conduct, "evidence that tends to negate guilt or mitigate the offense shall be disclosed" to Tarin. The court ordered any such evidence "to be produced on or before 5:00 p.m. on the day of its discovery or by agreement." The order stated that "any items herein not produced in violation of this order shall be and are excluded from evidence in this case if offered by the State." Finally, according to the order, "testimony concerning the items not produced in violation of this order, the information contained in those items, and the results obtained from those items shall be and are excluded from evidence in this case if offered by the State."

On December 7, 2016, over a year after Tarin was first charged, the case was reset again for March 10, 2017. On March 10, 2017, the trial court heard preliminary matters. Defense counsel reminded the trial court that it had signed "a standing discovery order on copying a production of blood testing records." Defense counsel emphasized that pursuant to that order, he should have received the items listed in the discovery order by August 2016. According to defense counsel, he had only been provided with results of blood testing that day:

> Now, the State has said that they e-mailed [the blood test results] and uploaded it to eDiscovery. I can tell you that I pulled everything from eDiscovery that was available to me at four in the morning today, and there was no blood result there. I do not have a copy of the e-mail in our e-mail and we cannot find it. I have in the past received e-mails from the State but regardless of when this last-minute

discovery was provided to us, it is well outside August of 2016 and so we want this order enforced and we want all of the information related to the blood excluded, which is also one of the terms of this order. On the last page, it says the Court further orders that any items herein not produced in violation of this order shall be and are excluded from evidence in this case if offered by the State.

Three prosecutors argued on behalf of the State. First, they explained that the trial court's order directed the Bexar County Medical Examiner's Office to provide blood discovery; however, in this case, the blood was not tested by the Bexar County Medical Examiner's Office, but by the Department of Public Safety ("DPS"). Thus, they argued the discovery order did not apply to DPS. Second, they emphasized that the order asked for results from tests already completed. According to the prosecutors, in this case, DPS received the blood sample to be tested on February 9, 2017, and the results were issued March 6, 2017, just four days before the hearing. Thus, the prosecutors argued that even if the trial court's order applied to DPS, DPS did not violate the order because when the trial court signed the standing discovery order, DPS had not received the blood sample and had not tested it. According to the prosecutors, there was nothing for DPS to produce and no violation of the order. Finally, one of the prosecutors explained that she personally received the results from DPS by email on Thursday, March 9, 2017, at 2:38 p.m. and forwarded the results to defense counsel's email at 2:41 p.m. that same day. Thus, she argued the blood test results were timely produced under the discovery order.

The trial court then asked this prosecutor when she had become aware that the sample in this case had not been tested. The prosecutor replied,

> I personally became aware of it when I was looking through the file and I didn't see one in the file. But I – as I understand it, prior prosecutors have tried to track down the blood and get it tested and we were just able to successfully do it, get it over to DPS and have it tested.

The trial court again asked when the blood sample had been received by DPS and was again told February 9, 2017.

Defense counsel then stated, "So the blood's just been wandering around for over a year, and it didn't apparently –or maybe it did, I don't know, go to the agency that the State told us it went to . . . ." Defense counsel emphasized that the State provided him with forms in discovery that represented the blood sample had been sent to the Bexar County Medical Examiner's Office. Defense counsel explained this representation by the State was the reason the standing order had been directed to the Bexar County Medical Examiner's Office. Indeed, Defendant's Exhibit 1, which was admitted in evidence, is a "Specimen Routing Report." The report reflects that Tarin's blood was drawn on September 14, 2015 at 1:36 a.m. at the San Antonio Magistration and Detention Facility. The report further reflects that the Bexar County District Attorney's Office is the entity submitting the specimen to the lab and that the blood specimen is being submitted "in person" to the Bexar County Medical Examiner's Office.

The trial court then asked the same prosecutor whether she disputed the facts in the Specimen Routing Report. The prosecutor replied, "Judge, I don't dispute that. It was—the time of this offense was when this office stopped using IFL as their contract laboratory. We were sending some samples over to BCME." The trial court then stated,

> [Defense counsel] receives a document from the State upon which he is legitimately depending. All right. *So I can see what the problem was. I will say for the record that the current assistant district attorneys in this courtroom, I do not hold responsible as individuals and as attorneys. I'm saying the record's kind of speaking for itself at this point.*

(emphasis added).

A third prosecutor then addressed the court:

> Judge . . . I would like to make an argument to the Court, if you would. We won't dispute the paperwork in the file did say that the specimen was being routed to the BCME lab. However, the fact – you know, what lab it eventually went to is not really an issue. What we're looking at is whether you should suppress the evidence based on our failure to comply with the discovery order, right? And in this situation, the discovery order signed was impossible; it was ineffective because it was –

whoever's fault it was, he didn't know the right lab. The discovery order just wasn't effective because the evidence didn't exist.

The trial judge replied that his concern was the eighteen-month delay in this case. "The testing should have been done way before now, not just in February of 2017." The trial judge reiterated that he did not blame the three prosecutors standing before him. However, he expressed great concern over the delay in this case:

> [A]t this point, the way I see it [the delay] was a failure of the Office of the District Attorney in Bexar County. I'm not here to fix blame or anything. What I'm seeing is somebody dropped the ball. So then does the defense have the right to rely on the order that was properly rendered? That order was signed back in . . . June [2016]. That should have put somebody on notice that, hey, we've got to look at this. Like [the prosecutor] did back in February [2017], [she] checked out and [found] out, hey, this hasn't been done, but that obligation existed months ago . . . .

One of the prosecutors disagreed with the trial court's assertion that "there was an obligation anywhere for the State to do one particular thing with its evidence." The prosecutor claimed the issue of whether the specimen was sent to a lab in a timely manner is one for the jury. But, the prosecutor emphasized that at the time the discovery order was signed, "the evidence did not exist." The trial judge responded, "The evidence existed but it had not been tested." The trial judge explained he was referring to "the requirement for diligence in testing [the blood sample] and providing that as evidence." Defense counsel then stated,

> The blood draw was effected on September 14, 2015. The reason we approached in June of 2016 [was] because we still didn't have a blood result. So when this [discovery order] was signed, it was fully understood by everybody that the reason we were requesting these deadlines be set [was] because there had already been an unreasonable delay in providing this discovery to the defense, and we didn't want to be sandbagged at a hearing or at trial with last-minute production of blood evidence. Because the State was just telling us throughout this case we don't know where [the blood specimen] is. And that answer was the same answer I got earlier this week and changed as far as I personally was aware of it this morning. So the order was signed with the understanding that we're trying to prevent exactly what is occurring now. They had not just from June to comply with your order and to be on notice, they were put on notice in June of 2016 because they had blood from September of 2015 and hadn't done anything with it.

The State responded that there was no obligation on the part of the State to test a blood sample: "Every blood sample that's taken in this county, there are two vials taken. The reason that we have two vials is the defense has the ability to test one of those vials." Defense counsel replied that he had not known where the blood sample was located:

> We were told that the blood was missing and they did not know where it was. We were told initially that it was at the Bexar County ME's office. That's where it had been sent. . . . Nobody knew what happened to it and we produced this order because that was the only place that anybody knew the blood had ever been sent.

According to defense counsel, it was only the day of the suppression hearing that he had been made aware of the blood samples' actual location.

The trial court then suppressed the blood evidence:

> I am going to suppress this evidence based on the violation of the standard order, based on the fact that the defense was led to believe that the Bexar County Medical Examiner's Office was the source or had the location of the testing material, based on the fact that there was a deadline clearly expressed in the order. I know that the prosecutors before me at this time had no knowledge of it and were not complicit in the fact that [defense counsel] was denied access to this material until today. I observed that [defense counsel] crossed his Ts and dotted his Is on it and I think your predecessors left you in the lurch, State. I know it's not in your character to ignore things; you've been working hard. I appreciate you. Nonetheless, I'm suppressing this evidence in this case.

### VIOLATION OF DISCOVERY ORDER

On appeal, the State argues the trial court erred in suppressing the blood evidence based on a violation of the discovery order because (1) any duty owed by the State under the order was not applicable until DPS created the report showing the blood-alcohol results; and (2) there is no evidence the State willfully violated the discovery order.

The State first argues the discovery order was not applicable until DPS produced the report. According to the State, "[w]hen the order was signed, no such documents or records existed because the blood had not been tested." We find this argument unpersuasive. The blood samples did exist at the time the discovery order was signed, and the discovery order makes clear that all

discovery was to be completed within sixty days of the order. Under the State's reasoning, it could intentionally wait to send evidence to a lab and then produce such evidence on the eve of trial and not be in violation of the discovery order. This is clearly not the intent of the discovery order. The State further argues that the "trial court does not have the authority to order the State to create a document that does not currently exiss." *See In re Stormer*, No. WR-66,865-01, 2007 WL 1783853, at *2 (Tex. Crim. App. 2007) (not designated for publication) ("The trial court does not have authority under article 39.14 [of the Texas Code of Criminal Procedure] to order the State to create a document that it does not already have."). Here, however, the trial court was not ordering the State to create a document. The State did not have to cause the blood sample to be sent to DPS. However, pursuant to the discovery order, if the State wanted to introduce results related to testing on the blood sample at trial, then it did need to timely send the blood sample to DPS. *See In re Stormer*, 2007 WL 1783853, at *2 n.1 ("Other statutes or rules may, of course, require the State to create a written response to a timely request for notice if it intends to offer certain evidence trial."). The record here reflects that the blood sample was not sent to DPS until 234 days after the trial court signed the discovery order. We therefore conclude the discovery order is applicable.

Second, the State argues there is no evidence to support the trial court's finding that it acted willfully. The court of criminal appeals has explained that "evidence willfully withheld from disclosure under a discovery order should be excluded from evidence[.]" *Francis v. State*, 428 S.W.3d 850, 854-55 (Tex. Crim. App. 2014) (quoting *Hollowell v. State*, 571 S.W.2d 179, 180 (Tex. Crim. App. 1978)). However, "[b]ecause exclusion of evidence in this context is in the nature of a court-fashioned sanction for prosecutorial misconduct, whether the trial court should exclude evidence on this basis has been made to hinge on 'whether the prosecutor acted with the specific intent to willfully disobey the discovery order[.]'" *Id.* at 855 (quoting *Oprean v. State*, 201 S.W.3d 724, 727 (Tex. Crim. App. 2006)). "Extreme negligence or even recklessness on the prosecutor's

part in failing to comply with a discovery order will not, standing alone, justify the sanction of excluding relevant evidence." *Id.*; *see also State v. LaRue*, 152 S.W.3d 95, 97, 99-100 (Tex. Crim. App. 2004) (holding that although the prosecutor "may have been extremely negligent or even reckless with respect to the result of his actions," the evidence in the record did not show willful conduct on part of the State).

"An appellate court must review a trial court's ruling to exclude evidence for willful prosecutorial defiance of a discovery order under an abuse-of-discretion standard, deferring to any trial-level ruling that falls within the zone of reasonable disagreement." *Id.* The court of criminal appeals has explained that it has "adopted a similar appellate posture in this context to that which [it has] applied to review pre-trial motions to suppress evidence." *Id.* "An appellate court must pay absolute deference to the trial court's findings of fact based on determinations of credibility or demeanor." *Id.*

The trial court's initial findings are detailed in our original opinion. *See Tarin*, 2018 WL 2024629, at *4-5. In its supplemental findings, the trial court found that the Bexar County District Attorney's Office acted willfully in not contacting the Department of Public Safety or the Bexar County Medical Examiner's Office, which in turn resulted in the blood specimen not being tested in a timely fashion. Evidence in the record reflects that (1) Tarin's blood sample was taken on September 14, 2015, (2) the blood sample was placed in the "Evidence Lockbox" of the San Antonio Magistration & Detention Facility; and (3) the blood sample was going to be submitted to "Bexar County Medical Examiner's Office" by the Bexar County District Attorney's Office. However, the record reflects that the Bexar County District Attorney's Office never sent the blood sample to the Bexar County Medical Examiner's Office. It was not until February 9, 2017, that DPS received the blood specimen as a result of a Bexar County Assistant District Attorney finally causing the sample to be sent to the lab. And, it was not until March 6, 2017, just four days before

the hearing, that defense counsel was finally informed by the Bexar County Assistant District Attorney that DPS had issued results relating to the blood sample.

In its findings, the trial court emphasizes the delay and gap of 514 days between the time in which Tarin's blood was drawn and the date it was tested by DPS. The trial court also emphasizes the "gap of approximately 234 days between the granting of the order on June 20, 2016 and the time the blood was sent to [DPS] for testing on February 9, 2017." The trial court further points to the "gap of approximately 262 days between the granting of the order on June 20, 2016 and the time the results were purported to have been received and forwarded by the Bexar County District Attorney's Office." In its findings, the trial court stressed that all of the assistant district attorneys of the Bexar County District Attorney's Office serve as agents for and representatives of the Bexar County District Attorney's Office and that it is the obligation of the entire office to ensure compliance with the court's order. The trial court found that the Bexar County District Attorney's Office "makes a deliberate choice as to what evidence to sponsor" and that "the failure to pursue the location of the blood and to secure the results in a timely manner was therefore willful." According to the trial court, the Bexar County District Attorney's Office "was willful in its decision not to contact the Department of Public Safety or the Bexar County Medical Examiner's Office and enforce the need to comply with the court's order."

The trial court also noted the Bexar County District Attorney's Office had provided no explanation for the substantial "gaps" referred to above. According to the trial court, the Bexar County District Attorney's Office had not offered any explanation "as to any efforts taken to ensure compliance with the discovery order," any "attempts to locate the blood evidence in this case," or any "explanation as to its location in the time frame in which the blood was missing." The trial court stressed the office did not offer any evidence "to show any effort to comply with the court's order and/or deadline for production of items in compliance with the court's order."

In considering this record, we conclude the trial court could reasonably infer from the evidence that the Bexar County District Attorney Office willfully violated the discovery order. The record reflects (1) a gap of 514 days between the time in which Tarin's blood was drawn and the date it was tested by DPS; (2) a gap of 234 days between the trial court's signing of the discovery order and the time Tarin's blood was sent to DPS; and (3) a gap of 262 days between the trial court's signing of the discovery order and the time the blood-alcohol results were forwarded by the Bexar County District Attorney's Office to defense counsel. Further, the record reflects that defense counsel was given a Specimen Routing Report showing that the blood sample was placed in the "Evidence Lockbox" of the San Antonio Magistration & Detention Facility and that the Bexar County District Attorney's Office was going to be submitting it to the Bexar County Medical Examiner's Office. It is undisputed that the Bexar County District Attorney's Office never submitted a blood sample to the Bexar County Medical Examiner's Office and instead represented to defense counsel that the blood samples were "missing." It is also undisputed that even though the blood samples were "missing," one of the Assistant District Attorneys assigned to the case was able to review the file before the suppression hearing, realize a blood-alcohol result was not in the file, and quickly track down Tarin's blood sample and have it sent to DPS. From this evidence, the trial court could reasonably infer willful conduct on the part of the Bexar County District Attorney's Office. Therefore, we hold the trial court did not abuse its discretion in suppressing the blood evidence.

We affirm the trial court's Order Suppressing Blood Evidence.

Karen Angelini, Justice

Do not publish