FILED IN
COURT OF CRIMINAL APPEALS

June 24, 2014

ABEL ACOSTA, CLERK

PD-1514-14
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 6/23/2015 3:11:35 PM
Accepted 6/24/2015 11:20:17 AM
ABEL ACOSTA
CLERK

**Cause No. PD-1514-14**

## Court of Criminal Appeals of Texas

**Ronnie Leon Dabney,**
Appellant

v.

**State of Texas,**
Appellee

On Petition for Discretionary Review from the Court of Appeals,
Second District of Texas No. 02-12-00530-CR

## State's Reply Brief to Appellant's Brief on the Merits

**Maureen Shelton**
Criminal District Attorney
Wichita County, Texas

**John Gillespie**
First Asst. Criminal District Attorney
Wichita County, Texas
State Bar No. 24083252
John.Gillespie@co.wichita.tx.us

**John Brasher**
Special Prosecutor
Wichita County, Texas
State Bar No. 02907800
brasherappeals@gmail.com
900 8th Street Suite 415
Wichita Falls, Texas 76301
(940) 244-0244 phone
(940) 244-0245 fax

**Andrew Wipke**
Assistant Criminal District Attorney
State Bar. No. 24090824
Andrew.Wipke@co.wichita.tx.us

900 Seventh Street
Wichita Falls, Texas 76301
(940) 766-8113 phone
(940) 716-8530 fax

**To the Court of Criminal Appeals:**

Pursuant to Rule 38.3 of the Rules of Appellate Procedure, the State submits its Reply Brief to Appellant's Brief on the Merits and responds to the following points raised by Appellant's brief.

# Table of Contents

Table of Contents ...............................................................................iii

Index of Authorities ........................................................................... vi

State's Reply.................................................................................... 1

1. Appellant's sufficiency argument is not properly before this Court as the court of appeals did not address it and Appellant did not file a cross-petition ........................................ 1

2. Appellant's position that the State must anticipate "what defensive issues it may want to rebut" is contrary to longstanding Texas law and the fact that the defense does not give notice of the defensive theories it will raise. ........ 2

3. The trial judge's limiting instruction restricted the jury's consideration to rebuttal purposes. The evidence was not available as part of the State's case-in-chief. .......................... 3

   a. Evidence is often admissible for multiple reasons and for varied purposes during a trial. ........................................ 4

   b. Here, the rebuttal evidence was offered and admitted for the limited purpose of rebuttal, and the judge restricted the jury's consideration to rebuttal purposes only. .................................................................................. 4

   c. As the law presumes that juries follow a court's limiting instruction, the evidence was not available to the State for the specific intent, case-in-chief reasons that Appellant claims. ............................................................ 5

4. The character of the proceedings at the time of the offer was rebuttal in nature. ............................................................ 5

   a. The evidence was expressly offered for rebuttal purposes. .................................................................... 6

b. The trial judged admitted the evidence specifically for rebuttal purposes. ................................................................6

c. The trial judge instructed the jury that the evidence was admitted for rebuttal purposes. .....................................6

d. Much like an examination of a hostile witness where the party calling the witness can cross-examine on direct, the content of the proceedings and not the mere form determines the nature of the proceedings. ...................7

e. The trial judge has broad discretion in conducting the order of the proceedings. While he could have required the State to wait until after the defense case to present the rebuttal evidence, the judge also had discretion to permit the rebuttal evidence earlier. .................8

f. Using his discretion, the trial judge permitted an interruption in the State's case-in-chief to admit rebuttal evidence.................................................................9

5. The defense attorney continued to advance the "my-friends-operated-a-meth-lab-on-my-property-and-I-just-came-home-right-before-the-cops-showed-up" defense throughout the trial. So, the defense opening accurately telegraphed the defensive theory.............................................10

6. At the new trial hearing, the trial judge rejected Appellant's contention that the prosecutor had willfully violated a discovery order......................................................12

7. The evidence supports the trial judge's belief that the prosecutor did not violate any discovery order........................13

8. The rebuttal evidence showed that Appellant had been caught with the accoutrements of an active meth lab at the same property in 2004. ....................................................17

9. The rebuttal evidence would also have been admissible to rebut Stephanie Dickerson's testimony in the defense case. .................................................................................. 18

10. The rebuttal evidence was essential at the time it was offered to counter the defensive theory. But, when Appellant absconded before closing, he greatly strengthened the State's case. ............................................. 19

11. Appellant's brief improperly references alleged facts not located in the record and asserts mere speculations as fact. ................................................................................. 20

Prayer .................................................................................. 22

Certificate of Compliance .................................................... 23

Certificate of Service .......................................................... 23

# Index of Authorities

**Cases**                                                                           **Page**

*Allridge v. State*, 762 S.W.2d 145 (Tex. Crim. App. 1988)..........................2

*Bass v. State,* 270 S.W.3d 557 (Tex. Crim. App. 2008). ................. 9, 11, 19

*Bryant v. State*, 282 S.W.3d 156, 168-69 (Tex. App.—Texarkana 2009, pet. ref'd) ...................................................................................7

*Dabney v. State,* No. 02-12-00353-CR, 2014 WL 5307178 (Tex. App.—Fort Worth 2014, pet. granted) (not designated for publication). ........................................................................................1

*Davila v. State*, 651 S.W.2d 797 (Tex. Crim. App. 1983). ................... 21, 22

*Francis v. State,* 428 S.W.3d 850 (Tex. Crim. App. 2014)........................ 12

*Janecka v. State*, 937 S.W.2d 456 (Tex. Crim. App. 1997). ............... 21, 22

*Lewis v. State*, 815 S.W.2d 560 (Tex. Crim. App. 1991) ............................5

*Gibson v. State*, 619 S.W.2d 169 (Tex. Crim. App. 1981) ..........................2

*Paschall v. State*, 285 S.W.3d 166 (Tex. App.—Fort Worth 2009, pet. ref'd) .............................................................................................. 16

*Reyna v. State*, 168 S.W.3d 173 (Tex. Crim. App. 2005). ..........................4

*Sapata v. State*, 574 S.W.2d 770 (Tex. Crim. App. Panel 3 1978) ..............8

*Sotelo v. State*, 913 S.W.2d 507 (Tex. Crim. App. 1995). ..........................1

*Suiter v. State*, 310 S.W.2d 81 (Tex. Crim. App. 1958) ..............................8

*Tex. Cookie Co. v. Hendricks*, 747 S.W.2d 873 (Tex. App.--Corpus Christi 1988, writ denied) .................................................................5

*Washington v. State*, 943 S.W.2d 501 (Tex. App.—Fort Worth 1997, pet. ref'd) ............................................................................... 2, 3

*Wheatfall v. State*, 882 S.W.2d 829 (Tex. Crim. App. 1994) ........................ 8

*Yohey v. State*, 801 S.W.2d 232 (Tex. App.—San Antonio 1990, pet. ref'd) ............................................................................................. 2, 3

**Statutes**

Tex. Code Crim. Proc. arts. 37-39 ............................................................ 2, 3

**Rules**

Tex. R. App. P. 21.7 ................................................................................... 22

Tex. R. App. P. 38.1(i). .......................................................................... 21, 22

Tex. R. App. P. 68.2(b) ................................................................................ 1

Tex. R. Evid. 404(b) ..................................................................................... 3

Tex. R. Evid. 801(d) ..................................................................................... 4

Tex. R. Evid. 801(e)(A). ............................................................................... 4

Tex. R. Evid. 803(1) & (2). ........................................................................... 4

## State's Reply

**1. Appellant's sufficiency argument is not properly before this Court as the court of appeals did not address it and Appellant did not file a cross-petition.**

While Appellant argues that the evidence was insufficient for the jury to find the rebuttal extraneous beyond a reasonable doubt,[1] the court of appeals did not address this argument[2] and Appellant did not include this in a cross-petition.

This Court has repeatedly explained that it "only reviews 'decisions' of the courts of appeals;" the Court does "not reach the merits of any party's contention when it has not been addressed by the lower appellate court."[3] The intermediate appellate court did not address this sufficiency argument.[4]

Additionally, Appellant filed no cross-petition in response to the State's petition for discretionary review. T.R.A.P. 68.2(b) instructs that when one party files a petition, the other side may file a petition "within 10 days after the timely filing of another party's petition."[5] In this case, the State's petition for review was filed on November 12, 2014 and accepted on November 14, 2014. In the months since the State filed its petition, Appellant has never

---

[1] *See Appellant's Brief* at 38-39.
[2] *See Dabney v. State*, No. 02-12-00353-CR, 2014 WL 5307178, at *10 (Tex. App.—Fort Worth 2014, pet. granted) (not designated for publication).
[3] *See, e.g., Sotelo v. State*, 913 S.W.2d 507, 509 (Tex. Crim. App. 1995).
[4] *See Dabney,* at *10.
[5] Tex. R. App. P. 68.2(b).

filed a cross-petition. Therefore, the issue of the sufficiency of the rebuttal evidence is not properly before this Court.

2. **Appellant's position that the State must anticipate "what defensive issues it may want to rebut" is contrary to longstanding Texas law and the fact that the defense does not give notice of the defensive theories it will raise.**

Appellant's position that "the State has a duty to anticipate what defensive issues it may want to rebut"[6] ignores longstanding Texas law[7] and the fact that, other than the insanity defense, the defense is not required to give any advance notice of its defensive theories.[8]

While Appellant makes much of his statement to Officer Whitefield that he just arrived,[9] Appellant overlooks the fact that defendants regularly deny statements they made to officers at a scene or accuse an officer of misrepresenting or misreporting what was said. Also, this statement was inadmissible as self-serving hearsay.[10]

---

[6] *See Appellant's Brief* at 6. ("the State has a duty to anticipate what defensive issues it may want to rebut in its case-in-chief.").

[7] *See, e.g., Gibson v. State*, 619 S.W.2d 169 (Tex. Crim. App. 1981) (explaining since the defense determines what defensive theories are advanced, the State cannot predict what evidence will be used as rebuttal before the trial); *see also Washington v. State*, 943 S.W.2d 501, 506 (Tex. App.—Fort Worth 1997, pet. ref'd)("By its very terms the notice requirements [of 404(b)] are not applicable to rebuttal evidence.); *Yohey v. State*, 801 S.W.2d 232 (Tex. App.—San Antonio 1990, pet. ref'd).

[8] Tex. Code Crim. Proc. Arts. 37-39.

[9] *See Appellant's Brief* at 6.

[10] *See, e.g., Allridge v. State*, 762 S.W.2d 145, 153 (Tex. Crim. App. 1988).

As Texas law does not require the defense to give notice of its defensive theories (other than insanity), the State does not know what defensive theories the defense will advance until the defense articulates those theories to the jury.[11]  Also, nowhere in the plain language of Rule 404(b) does it reference "rebuttal evidence."[12]  Thus, the Rule 404(b) notice requirement does not apply to evidence offered for rebuttal purposes following the defense opening-the-door and raising a defensive theory.

**3. The trial judge's limiting instruction restricted the jury's consideration to rebuttal purposes. The evidence was not available as part of the State's case-in-chief.**

Appellant's argument that the State could have offered the extraneous offense as evidence of specific intent so the State was precluded from offering it as rebuttal evidence ignores the fact that evidence is often admissible on multiple grounds and for different reasons during a trial and the fact that the judge restricted the jury's consideration of the evidence to rebuttal purposes only.

---

[11]    Tex. Code Crim. Proc. Arts. 37-39.

[12]    Tex. R. Evid. 404(b); *see also Washington*, 943 at 506; *Yohey*, 801 at 232.

### a. Evidence is often admissible for multiple reasons and for varied purposes during a trial.

A myriad of reasons can often support the admission of evidence before a jury. For example, an out-of-court statement could be admitted for a limited purpose not for the truth of the matter asserted (such as to show context);[13] could be admitted as a non-hearsay prior inconsistent statement of the witness;[14] or could be admitted as an exception to the hearsay rule (such as a present sense impression or excited utterance).[15]

As such, a trial court must consider the basis for admission articulated by the proponent of the evidence.[16]

### b. Here, the rebuttal evidence was offered and admitted for the limited purpose of rebuttal, and the judge restricted the jury's consideration to rebuttal purposes only.

The State only articulated a rebuttal purpose for the admission of the 2004 meth offense in both its bench brief for admission and in the prosecutor's arguments before the trial judge.[17] The trial judge admitted the evidence for rebuttal purposes, and restricted the jury's consideration of the

---

13      Tex. R. Evid. 801(d).
14      Tex. R. Evid. 801(e)(A).
15      Tex. R. Evid. 803(1) & (2).
16      *See Reyna v. State*, 168 S.W.3d 173, 180 (Tex. Crim. App. 2005).
17      C.R. 81-87; R.R. 6:9-21.

4

2004 meth offense to rebuttal purposes in both an oral limiting instruction and in the Court's charge.[18]

### c. As the law presumes that juries follow a court's limiting instruction, the evidence was not available to the State for the specific intent, case-in-chief reasons that Appellant claims.

While Appellant argues that the 2004 meth offense would have been available as evidence of specific intent in a circumstantial evidence case,[19] Appellant's speculation overlooks the fact that the evidence was expressly offered and admitted only for a rebuttal purpose and the jury's consideration of it was so restricted.[20] The law presumes that juries follow a trial court's limiting instruction.[21] Thus, the evidence was not available to the jury for the specific intent, case-in-chief purpose that Appellant claims.

### 4. The character of the proceedings at the time of the offer was rebuttal in nature.

Appellant's reliance on the notice requirements of 404(b) for evidence offered in the State's case-in-chief is misplaced because the character of the proceedings at the time of the proffer was rebuttal in nature, not case-in-chief.

---

18     R.R. 6:33; C.R. 98.
19     *See Appellant's Brief* at 12.
20     R.R. 6:33; C.R. 98.
21     *See Tex. Cookie Co. v. Hendricks*, 747 S.W.2d 873, 882 (Tex. App.--Corpus Christi 1988, writ denied); *see also Lewis v. State*, 815 S.W.2d 560, 556 (Tex. Crim. App. 1991) (explaining limiting instructions ensure jury does not rely upon admitted evidence for an impermissible purpose).

### a. The evidence was expressly offered for rebuttal purposes.

The State in both its bench brief and in its argument to the trial court could not have been clearer that it was offering the evidence to rebut the defensive theories raised in voir dire and opening.[22] In fact, Judge Brotherton indicated the reason for the hearing: "Prior to resuming this morning, the State's asked to present argument on a rebuttal theory."[23]

### b. The trial judged admitted the evidence specifically for rebuttal purposes.

The State not only argued that the evidence was admissible for rebuttal, but also provided the trial judge with multiple cases supporting the rebuttal basis for admission.[24] After considering the State's bench brief and argument of the parties, the trial judge admitted the evidence to rebut the defensive theories.[25]

### c. The trial judge instructed the jury that the evidence was admitted for rebuttal purposes.

Immediately following the rebuttal testimony, the trial judge instructed the jury that it had been "admitted for the limited purpose of rebutting, if it does, the defensive theory of mistake or accident."[26] In the court's charge,

---

[22]    C.R. 81-87; R.R. 6:9-21.
[23]    R.R. 6:9.
[24]    R.R. 6:9-21.
[25]    R.R. 6:20-21.
[26]    R.R. 6:33.

the trial judge instructed the jury that as to the rebuttal evidence, they "may only consider the same as evidence to *rebut the defensive theory of mistake or accident*."[27] So, the trial judge instructed the jury that this evidence was admitted as rebuttal evidence only.

**d. Much like an examination of a hostile witness where the party calling the witness can cross-examine on direct, the content of the proceedings and not the mere form determines the nature of the proceedings.**

Courts always look beyond mere form to determine the true character of the proceedings. For example, when a party calls a hostile or adverse witness, the party may use leading questions and conduct a cross-type examination even though he appears to be on direct.[28]

Similarly, here the State filed a bench brief and asked the trial judge to admit the extraneous offense to rebut the defensive theory.[29] The trial court agreed with the State, admitted the evidence, and instructed the jury as to the rebuttal purpose.[30]

Thus, looking beyond mere form, at the point that the extraneous meth offense was admitted, the true character of the proceedings was rebuttal in nature. The evidence was not offered as part of the State case-in-chief, but

---

[27]     C.R. 98.
[28]     *See, e.g., Bryant v. State*, 282 S.W.3d 156, 168-69 (Tex. App.—Texarkana 2009, pet. ref'd).
[29]     R.R. 6:9.
[30]     R.R. 6:21; C.R. 98.

7

was rather offered and admitted specifically to rebut the defensive theory advanced in voir dire and opening statement.

**e. The trial judge has broad discretion in conducting the order of the proceedings.  While he could have required the State to wait until after the defense case to present the rebuttal evidence, the judge also had discretion to permit the rebuttal evidence earlier.**

This Court has long recognized that a trial judge has broad discretion in conducting a trial.[31]  This discretion extends to the manner of examining a witness,[32] the means of presentation of documentary evidence to a jury,[33] and to a variety of odd or unusual situations that may arise in a trial.[34]

At the admissibility hearing, Appellant's trial counsel informed the judge: "I would agree, if [the prosecutor] wanted to offer this after we put on our testimony he wouldn't have to give me notice, but right now, Judge, he has to give me notice."[35]  While appearing to concede the evidence would be admissible in rebuttal, Appellant's trial counsel was complaining about when in the trial the rebuttal evidence was admitted.[36]  Appellant's counsel

---

[31]    *See generally, Sapata v. State*, 574 S.W.2d 770, 771 (Tex. Crim. App. Panel 3 1978) ("The trial court is necessarily vested with broad discretion to conduct a trial. Such discretion is necessary to allow him to deal with the infinite variety of situations…which can arise in a trial context."); *see also Wheatfall v. State*, 882 S.W.2d 829 (Tex. Crim. App. 1994).
[32]    *See Suiter v. State*, 310 S.W.2d 81, 82 (Tex. Crim. App. 1958).
[33]    *See Wheatfall*, 882 at 838.
[34]    *See Sapata*, 574 at 771.
[35]    R.R. 6:20.
[36]    R.R. 6:20.

8

overlooked the broad discretion afforded to the trial judge in managing the trial.

With this broad discretion, the trial judge could undoubtedly have required the State to wait until after Appellant's case to present the rebuttal evidence. Conversely, in light of this Court's guidance in *Bass v. State*, the trial judge also had the discretion to permit the State to present the rebuttal evidence without waiting until after Appellant's case.[37]

### f. Using his discretion, the trial judge permitted an interruption in the State's case-in-chief to admit rebuttal evidence.

When a trial judge exercises his discretion like this, he basically calls a time-out to the State's case-in-chief and allows the State to delve into the rebuttal phase early.[38] Logically, once the State finishes with the rebuttal evidence, the State's case-in-chief evidence resumes.

This exact procedure happened here. Following the rebuttal witness, when the State called its next witness, the trial judge asked, "Is his testimony back on the case-in-chief?"[39] When the prosecutor said that it was, the judge admonished the jury about the preceding rebuttal evidence, and then the State's case-in-chief resumed.[40]

---

[37]     270 S.W.3d 557, 563 n.7 (Tex. Crim. App. 2008).
[38]     *See generally id.* at 563 n.7.
[39]     R.R. 6:33.
[40]     R.R. 6:33.

9

Situations like this are not uncommon in jury trials. For example, to accommodate a witness scheduling issue, a trial judge has discretion to permit a defense witness to testify before the State has rested its case-in-chief.[41]

**5. The defense attorney continued to advance the "my-friends-operated-a-meth-lab-on-my-property-and-I-just-came-home-right-before-the-cops-showed-up" defense throughout the trial. So, the defense opening accurately telegraphed the defensive theory.**

Not only did Appellant raise the defensive theory in voir dire and opening, but he also advanced that theory during his case-in-chief and during closing argument. During the defense case, Appellant called Stephanie Dickerson.[42] Ms. Dickerson claimed that she and Appellant had gone for a motorcycle ride and then had talked at another house "for a significant period of time."[43] Ms. Dickerson testified that she and Appellant had returned "just moments" before the police arrived.[44] Ms. Dickerson said she hadn't even

---

[41] *See generally Brown v. State*, 907 S.W.2d 835, 842 (Tex. Crim. App. 1995) (explaining that it is common for witnesses to be called out of sequence based upon availability and that "a trial attorney must be prepared for unforeseen difficulties, including unavailable witnesses, and accommodate those difficulties as best as possible.").

[42] R.R. 6:103.

[43] R.R. 6:107-09,112.

[44] R.R. 6:109,112.

10

had time to walk up onto the porch and knock on the door when the police appeared.[45]

During closing, Appellant's attorney framed his argument with this same defensive theory:

> "Ronnie Dabney is an innocent person who was found in suspicious circumstances. He has been gone all night long, came home right before the police showed up, didn't know what was going on, and he got caught up in all these six arrests of these people. And so that's what this case is about."[46]

Appellant's closing continued along this theme with the defense attorney insisting, "What really happened was is that Ronnie left with this lady…He's gone all night...but he comes back in the morning with her…and there he is, an innocent person caught in suspicious circumstances…"[47]

Throughout the defense case and closing argument, Appellant continued to advance the defensive theory of an innocent person accidentally and mistakenly in the wrong place at the wrong time with the wrong people. Therefore, Appellant presented evidence on his defensive theory which further justified the State's rebuttal evidence.[48]

---

[45]     R.R. 6:109.
[46]     R.R. 7:17.
[47]     R.R. 7:27-28.
[48]     *See Bass*, 270 S.W.3d at 563 n.7.

11

**6. At the new trial hearing, the trial judge rejected Appellant's contention that the prosecutor had willfully violated a discovery order.**

Appellant claims that "the trial court never reached the issue as to whether the State willful [sic] violated the pre-trial order because the trial court believed that this was 'rebuttal evidence.'"[49] Appellant defends the court of appeals "finding that there was a willful violation."[50] However, in light of this Court's admonition in *Francis v. State* that the trial judge is owed "almost absolute deference to the [trial judge's] implicit conclusion that the prosecutor's conduct was less than willful," the fact that Appellant claims the trial court made no finding regarding prosecutorial willfulness (because the trial judge did not believe the discovery order applied to rebuttal evidence like this) demonstrates the inappropriateness of the appellate court ignoring the trial judge and substituting its own finding of willfulness.[51]

The Second Court's violation of *Francis* is even more startling because at the motion for new trial hearing, Appellant expressly argued that the prosecutor willfully violated the discovery order.[52] Appellant made this contention in both his written motion and to the trial judge at the new trial

---

49    *See Appellant's Brief* at 48.
50    *Id*.
51    428 S.W.3d 850, 856 (Tex. Crim. App. 2014).
52    *Id*.; R.R. (9:8,10).

12

hearing.[53] Importantly, the trial judge rejected Appellant's claim in his ruling denying the motion for new trial.[54] The trial judge, thus, did not believe that the prosecutor had violated his discovery order, much less willfully. The Second Court and Appellant have both ignored the trial judge's express rejection of the contention that the prosecutor willfully violated the discovery order.

7. **The evidence supports the trial judge's belief that the prosecutor did not violate any discovery order.**

While Appellant engages in many speculative theories about the subjective motives of the prosecutor, the trial judge did not find mal-intent by the prosecutor, but instead expressly accepted the rebuttal need for this evidence.[55] In fact, there was no evidence to suggest mal-intent or gamesmanship by the prosecutor.[56] Clearly, the trial judge did not believe such mal-intent existed, as evidenced by his ruling where he admitted the rebuttal offense, expressly calling it "proper evidence."[57]

Further, the evidence supports the trial judge's implicit finding that the prosecutor was operating in good faith and had no intent to offer the 2004

---

[53]     C.R. 111-13; R.R. 9:8.
[54]     R.R. 9:10.
[55]     R.R. 6:21,24.
[56]     R.R. 6:1-24; 9:1-10.
[57]     R.R.6:21.

13

offense until defense counsel raised his defensive theory that required a rebuttal.

First, the prosecutor did not file 404(b) notice, but filed notice of prior convictions almost a year before trial,[58] and timely filed a witness list, designation of expert witnesses, and notice of prior convictions.[59]   A prosecutor who files notice of prior convictions, a witness list, designation of expert witnesses, and extraneous notice in a timely manner clearly knows how to notice items that he believes are important to ensure he is able to develop that evidence at trial.   Rather than support some dark-hearted, nefarious plotting by the prosecutor to somehow try to catch the defense attorney off-guard, the simple explanation makes the most sense: the prosecutor truly had no intention of offering the 2004 offense until the need for rebuttal arose.

Second, Investigator Dilbeck testified that he had not discussed testifying about the 2004 rebuttal offense with the prosecutor until the previous day[60] (which would have been after the need for the rebuttal evidence became apparent at trial).[61] When asked if he had reviewed the

---

[58]    C.R. 56-57.
[59]    C.R. 58-60,61-62.
[60]    R.R. 6:28.
[61]    R.R. 5:1,16-22; 6:1.

probable cause affidavit for the 2004 arrest "before today," Investigator Dilbeck said "I just looked at it this morning."[62] So, Investigator Dilbeck's testimony showed he had not been prepared in advance of trial to testify by the prosecutor, but had only been contacted once the need for rebuttal became apparent during the trial.[63] This buttresses the trial judge's implicit finding that the prosecutor was operating in good faith to address a need for rebuttal evidence, rather than calculating in advance to circumvent the trial judge's order.

Third, the prosecutor clearly represented to the trial court, as an officer of the court, that he was offering the testimony to rebut the defensive theories that Appellant's counsel had advanced in jury selection, opening statement, and through his cross-examination of the witnesses up until that point.[64] The prosecutor consistently maintained he was offering the evidence for rebuttal purposes.[65]

Fourth, Appellant's complaint that the drug results from the 2004 offense were not in the State's file on the instant offense actually shows the prosecutor had no intention to delve into the 2004 offense before the need

---

[62] R.R. 6:28.
[63] R.R. 6:28.
[64] R.R. 6:9-21.
[65] R.R. 6:9-21; 9:8-10.

15

for rebuttal arose during trial. Instead of supporting a nefarious motive to somehow try to catch the defense off-guard, Occam's razor suggests a simpler explanation: the results were not in the file on the instant case because the prosecutor had no intent to introduce the 2004 case[66] (other than the prior conviction for impeachment or punishment) until defense counsel opened the door by forcefully advancing the mistake/accident "wrong person, wrong time, wrong place" defensive theory in jury selection, opening, and through his examination of the witnesses. As a result, the prosecutor tracked-down the 2004 file and Investigator Dilbeck during the trial.[67]

---

[66] There is also no evidence in the record that the defense attorney, after receiving notice of the State's intent to offer the 2004 conviction for possession of controlled substance for impeachment and/or punishment evidence, ever asked to see the file for cause number 42,517-A, which contained the drug results related to that conviction. (R.R. 6:1-21; 9:1-10). The defense attorney had notice of that conviction 10 months before trial and could have requested to see that file, if he so wished. (C.R. 56-57).

As this Court is well aware, a certified copy of a judgment will suffice for impeachment purposes or to prove up a prior conviction. *See, e.g., Paschall v. State*, 285 S.W.3d 166, 174 (Tex. App.—Fort Worth 2009, pet. ref'd)(noting that certified copy of a judgment is preferred and convenient means of proving up a prior conviction). Thus, the prosecutor had no reason to believe that the contents of the file (other than a certified judgment of the conviction) related to the 2004 conviction were evidence in the instant case, until defense counsel articulated his defensive theory to the jury that elucidated the importance of the 2004 case and its rebuttal value. (R.R. 5:16-17).

[67] R.R. 6:28. This is a reasonable inference from Investigator Dilbeck's testimony. Additionally, there is no evidence in the record that the prosecutor had contacted or prepped Investigator Dilbeck regarding the 2004 offense before the rebuttal need for the evidence arose during trial. (R.R. 6:1-28; 9:1-10).

Fifth, as Appellant's trial counsel has admitted he was aware of the prior drug conviction, the prosecutor is not to blame for defense counsel's strategic decision to advance a defensive theory in opening that opened the door to rebuttal evidence stemming from that drug conviction.[68]  With this knowledge of the prior meth conviction, defense counsel should have been more careful about his defensive theories.

Sixth, the prosecutor is not responsible for Appellant's trial counsel's failure to ask for a recess or extra time for the court to prepare for the rebuttal evidence. Appellant could have asked for a recess or a brief continuance to investigate, but he never made any such request.[69]  Defense counsel cannot now legitimately blame the prosecutor for the defense decision not to request additional time if he believed he needed it.[70]

**8. The rebuttal evidence showed that Appellant had been caught with the accoutrements of an active meth lab at the same property in 2004.**

The record reveals the utter falsity of Appellant's attorney's claims that the prosecutor somehow misled the trial judge about the rebuttal evidence showing a previous active meth lab on the same property.[71] In accusing the

---

[68]    *See Appellant's Brief* at 35.
[69]    R.R. 6:15-21.
[70]    R.R. 6:20.
[71]    *See Appellant's Brief* at 39.

prosecutor of misleading the court, Appellant's attorney selectively cites portions of Investigator Dilbeck's testimony.[72] Conveniently, Appellant's attorney decided not to recount[73] this exchange:

> **Prosecutor:** And based on your training and experience as a narcotics officer, did it appear to you that there was an active meth lab at that trailer?
>
> **Investigator Dilbeck:** It appeared to me that there had been, yes.[74]

Additionally, Investigator Dilbeck found the following evidence that was consistent with a recent, active meth lab at the residence: ether cans, punched blister packs from pseudoephedrine packages, rubber hosing, syringes, weapons, two sets of scales commonly used to weigh drugs prior to being sold, Prestone starter fluid cans, and more than a personal-use quantity of methamphetamine.[75] All of this testimony supported the prosecutor's representations and was received by the trial judge.[76]

## 9. The rebuttal evidence would also have been admissible to rebut Stephanie Dickerson's testimony in the defense case.

The rebuttal evidence would also have been admissible following Stephanie Dickerson's testimony in the defense case which further

---

[72] *See Appellant's Brief* at 40-46.
[73] *See Appellant's Brief* at 40-46.
[74] R.R. 6:27.
[75] R.R. 6:26-27,32.
[76] R.R. 6:26-27,32.

advanced the defense theory of accident or mistake.[77]  This Court has been

clear that while a trial judge does not have to require the State to wait until

after the defense case to rebut a defensive theory that opens the door in

opening statement, the trial judge additionally commits no error if the rebuttal

evidence would have been admissible following the defense case, but was

admitted earlier in the trial.[78]  Stephanie Dickerson's testimony in the defense

case would have also supported admission of the rebuttal evidence.[79]  As

such, even assuming en arguendo that admission at the time was error, the

rebuttal evidence would have been admissible following the defense case.

Thus, no harm could have resulted from its admission.[80]

10.  **The rebuttal evidence was essential at the time it was offered to counter the defensive theory.  But, when Appellant absconded before closing, he greatly strengthened the State's case.**

While Appellant claims there is some inconsistency between the trial

judge agreeing with the prosecutor that the rebuttal evidence was "essential"

to rebut the defensive theory and the State representing on appeal that the

overwhelming evidence of Appellant's guilt militated against a harm finding,

---

[77]     R.R. 6:107-09,112.
[78]     *See Bass*, 270 S.W.3d at 563 n.7.
[79]     R.R. 6:103-112.
[80]     *See Bass*, 270 S.W.3d at 563 n.7.

Appellant ignores the fact that he absconded after the rebuttal evidence had been admitted but before closing argument.[81]

Absconding before closing materially changed the position of the case. Defense counsel was left without a client at trial.[82] The State was clear in its brief on the merits that it was Appellant's absence from closing—which the memorandum opinion ignored—coupled with the circumstantial evidence that militated against a harm finding.[83]  To accuse the State of hypocrisy, Appellant's attorney has to overlook the fact that the State's harm argument hinged upon Appellant's fleeing before closing.[84]  It is difficult to understand how Appellant's counsel missed this key point as it was contained in the bold header introducing the State's harm argument and referenced throughout that argument.[85]

### 11.  Appellant's brief improperly references alleged facts not located in the record and asserts mere speculations as fact.

Appellant's brief makes several references to so-called facts that are outside the record.  This Court has rejected such unsupported assertions: "It is a long-standing principle that we cannot review contentions which depend

---

[81]     *See Appellant's Brief* at 58-59.
[82]     R.R. 7:4-5.
[83]     *See State's Brief* at 17-19.
[84]     *See Appellant's Brief* at 58-59.
[85]     *See State's Brief* at 17.

upon factual assertions outside the record."[86] "Assertions in an appellate brief unsupported by evidence cannot be accepted as fact."[87] Further, the Texas Rules of Appellate Procedure require an appellant's brief to contain "appropriate citations…to the record."[88]

First, Appellant's attorney references a conversation he had with Appellant following the trial.[89] There is not a record cite for this conversation.[90] And, the State could not locate this conversation in the record. It appears Appellant is improperly referencing items outside the trial record, which cannot be accepted as fact or considered by this Court.[91]

Second, Appellant's attorney alleges the following:

> "the prosecutor recommended a no bill to the grand jury. In short, the prosecutor who recommended the no bill for possession of pseudoephedrine with intent to manufacture, advised the trial court that there was an active meth lab with every component part present."[92]

Appellant's attorney cites to no evidence in the record—nor is the State aware of any record support—concerning any recommendation to the grand

---

[86]    *Janecka v. State*, 937 S.W.2d 456, 476 (Tex. Crim. App. 1997).
[87]    *Davila v. State*, 651 S.W.2d 797, 799 (Tex. Crim. App. 1983).
[88]    Tex. R. App. P. 38.1(i).
[89]    *See Appellant's Brief* at 46.
[90]    *See id.*
[91]    *See Janecka*, 937 at 476; *Davila*, 651 at 799.
[92]    *See Appellant's Brief* at 46-47.

jury.[93]  This gross speculation, unsubstantiated by the record, falls outside

the bounds of appropriate briefing and cannot be accepted as fact for the

purposes of the present appeal.[94]

**Prayer**

The State prays that the Court reverse the decision of the Second

Court of Appeals and affirm Appellant's conviction.

<div style="margin-left:40%">

Respectfully submitted,

  /s/ John R. Gillespie
John R. Gillespie
First Assistant District Attorney
Wichita County, Texas
State Bar No. 24010053
900 7th Street
Wichita Falls, Texas 76301
(940) 766-8113
Fax: (940) 766-8177
Email: John.Gillespie@co.wichita.tx.us

  /s/ John Brasher
John Brasher
Asst. Crim. Dist. Attorney
Wichita County, Texas
State Bar No. 02907800

</div>

---

[93]  *See id*.

[94]  *See* Tex. R. App. P. 38.1(i); *Janecka,* at 476; *Davila*, at 799.  Additionally, the trial judge had a hearing on Appellant's motion for new trial on November 30, 2012, more than two months after the jury trial in this case. (R.R. 9:1). Appellant's attorney offered nothing to support these contentions at the motion for new trial, either. (R.R. 9:1-10).  Trial courts can certainly receive evidence at hearings on motion for new trial. *See* Tex. R. App. P. 21.7.  So, Appellant's attorney failed to develop these alleged facts at either the trial or the motion for new trial hearing, even though he had an additional two months to inquire into this information.  (R.R. 9:1-10).

## Certificate of Compliance

I certify that this brief contains 4,701 words, after the applicable exclusions.

           /s/ John R. Gillespie
           John R. Gillespie

## Certificate of Service

I hereby certify that on June 23, 2015, I electronically filed the foregoing document with the clerk of court for Texas Court of Criminal Appeals, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to the following attorney of record: Mark H. Barber, Mbarberlaw@aol.com; and to the State Prosecuting Attorney, at information@spa.texas.gov, P.O. Box 13046, Austin, TX 78711-3046.

           /s/ John R. Gillespie
           John R. Gillespie