ACCEPTED
05-17-00959-CR
FIFTH COURT OF APPEALS
DALLAS, TEXAS
3/26/2018 11:25 AM
LISA MATZ
CLERK

## No. 05-17-00959-CR

In the Court of Appeals
for the Fifth District of Texas
at Dallas

FILED IN
5th COURT OF APPEALS
DALLAS, TEXAS
3/26/2018 11:25:57 AM
LISA MATZ
Clerk

---

## DARRYL PAUL GAMBLE,
APPELLANT

v.

## THE STATE OF TEXAS,
APPELLEE

---

*On Appeal from the Criminal District Court No. 1*
*Dallas County, Texas*
*In Cause No. F17-54557-H*

---

## STATE'S BRIEF

---

FAITH JOHNSON
Criminal District Attorney
Dallas County, Texas

NINA L. SCHERACH
Assistant District Attorney
State Bar No. 24100660
Frank Crowley Courts Building
133 N. Riverfront Boulevard, LB-19
Dallas, Texas 75207-4399
(214) 653-3625 | (214) 653-3643 *fax*
Nina.Scherach@dallascounty.org

*Attorneys for the State of Texas*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................. iii

STATEMENT OF THE CASE ........................................................................................... 1

STATEMENT OF THE FACTS .......................................................................................... 1

SUMMARY OF ARGUMENTS .......................................................................................... 7

ARGUMENTS ............................................................................................................... 7

*Response to Appellant's First Point of Error* ............................................................ 7

The State presented legally-sufficient evidence to support Appellant's conviction for burglary of a building. .................................................................................... 7

    A. Standard of Review .................................................................................. 8

    B. Applicable Law ......................................................................................... 9

    C. Application of Law to Facts .................................................................... 11

*Response to Appellant's Second Point of Error* ...................................................... 14

Appellant failed to preserve this issue for appellate review because he did not timely object to the complained-of photographs. Even if he did preserve this issue, the trial court did not abuse its discretion in overruling Appellant's objection to the photographs. In the alternative, even if the trial court erred, Appellant was not harmed by the error. .................................................................. 14

    A. Relevant Facts ........................................................................................ 14

    B. Preservation of Error ............................................................................. 16

    C. Standard of Review and Applicable Law ............................................... 18

    D. No Error ................................................................................................. 19

    E. No Harm .................................................................................................. 22

PRAYER .................................................................................................................... 24

CERTIFICATE OF COMPLIANCE ................................................................................. 25

CERTIFICATE OF SERVICE ......................................................................................... 25

# TABLE OF AUTHORITIES

## CASES

*Adams v. State*, 552 S.W.2d 812 (Tex. Crim. App. 1977)...................................10, 13

*Benedict v. State*, No. 05-15-00958-CR, 2016 WL 3742127 (Tex. App.—Dallas July 7, 2016, pet. ref'd) (mem. op., not designated for publication) .........................20

*Clayton v. State*, 235 S.W.3d 772 (Tex. Crim. App. 2007) ................................8, 9

*Davila v. State*, Nos. 05-16-00225-CR, 05-16-00226-CR, 2017 WL 656473 (Tex. App.—Dallas Feb. 17, 2017, no pet.) (mem. op., not designated for publication) ............................................................................................16, 17

*De La Paz v. State,* 279 S.W.3d 336 (Tex. Crim. App. 2009). .........................18

*Earls v. State*, 707 S.W.2d 82 (Tex. Crim. App. 1986)..............................9, 10, 13

*Francis v. State*, 428 S.W.3d 850 (Tex. Crim. App. 2014).....................18, 19, 20

*Fuller v. State*, 253 S.W.3d 220 (Tex. Crim. App. 2008) .....................................16

*Garza v. State*, 841 S.W.2d 19 (Tex. App.—Dallas 1992, no pet.)....................9

*Hooper v. State*, 214 S.W.3d 9 (Tex. Crim. App. 2007) ....................................9

*Jackson v. Virginia*, 443 U.S. 307 (1979) ..................................................8, 9, 13

*Johnson v. State*, 673 S.W.2d 190 (Tex. Crim. App. 1984) ................................9

*King v. State*, 953 S.W.2d 266 (Tex. Crim. App. 1997)....................................23

*Kirksey v. State*, 132 S.W.3d 49 (Tex. App.—Beaumont 2004, no pet.).........21

*Lane v. State*, 151 S.W.3d 188 (Tex. Crim. App. 2004) ...............................23, 24

*Layton v. State*, 280 S.W.3d 235 (Tex. Crim. App. 2009) ............................16, 17

*Marmon v. State*, 704 S.W.2d 90 (Tex. App.—Dallas 1985, pet. ref'd)...........10

*Martinez v. State*, 98 S.W.3d 189 (Tex. Crim. App. 2003) ............................16, 17

*Mendez v. State*, 138 S.W.3d 334 (Tex. Crim. App. 2004) ................................16

*Middleton v. State*, 187 S.W.3d 134 (Tex. App.—Texarkana 2006, no pet.) .................... 13

*Montez v. State*, 975 S.W.2d 370 (Tex. App.—Dallas 1998, no pet.). ............................. 23

*Moore v. State*, 999 S.W.2d 385 (Tex. Crim. App. 1999) ...................................... 16

*Morales v. State*, 32 S.W.3d 862 (Tex. Crim. App. 2000). .................................... 23

*Moses v. State,* 105 S.W.3d 622 (Tex. Crim. App. 2003) ..................................... 19

*Motilla v. State*, 78 S.W.3d 352 (Tex. Crim. App. 2002). .................................... 23

*Poncio v. State*, 185 S.W.3d 904 (Tex. Crim. App. 2006) .................................... 10

*Ramsey v. State*, 473 S.W.3d 805 (Tex. Crim. App. 2015) ................................. 8, 9

*Rendon v. State*, No. 11-14-00080-CR, 2016 WL 787150 (Tex. App.—Eastland
 Feb. 25, 2016, pet. ref'd) (mem. op., not designated for publication) ...................... 21

*Reyes v. State*, 422 S.W.3d 18 (Tex. App.—Waco 2013, pet. ref'd) ................................. 10

*State v. LaRue*, 108 S.W.3d 431 (Tex. App.—Beaumont 2003), *aff'd*, 152 S.W.3d 95
 (Tex. Crim. App. 2004) .................................................................. 20

*Sutherlin v. State*, 682 S.W.2d 546 (Tex. Crim. App. 1984) ............................... 10

*Taylor v. State*, 508 S.W.2d 393 (Tex. Crim. App. 1974) .................................... 10

*Taylor v. State,* 268 S.W.3d 571 (Tex. Crim. App. 2008) ................................... 18

*Tillman v. State*, 354 S.W.3d 425 (Tex. Crim. App. 2011) .................................. 18

## STATUTES

Tex. Code Crim. Proc. Ann. Art. 39.14 (West Supp. 2017) ...................................... 19, 21

Tex. Penal Code Ann. § 30.02 (West Supp. 2017) ......................................... 1, 9

## RULES

Tex. R. App. P. 33.1 ............................................................................. 16

Tex. R. App. P. 44.2 ............................................................................ 22, 23

**TO THE HONORABLE COURT OF APPEALS:**

The State of Texas submits this brief in response to the brief of Appellant, Darryl Paul Gamble.

## STATEMENT OF THE CASE

Appellant was charged by indictment with burglary of a building. (C.R.: 8). *See* Tex. Penal Code Ann. § 30.02(a), (c)(1) (West Supp. 2017). The indictment included two enhancement paragraphs alleging Appellant had two prior state-jail felony convictions. (C.R.: 8, 22, 46). Appellant pled not guilty to the charged offense, but a jury found him guilty. (C.R.: 62; R.R.3: 14). Appellant pled true to the enhancement paragraphs, and the jury sentenced him to ten years' confinement in the Institutional Division of the Texas Department of Criminal Justice. (C.R.: 47, 68–71; R.R.3: 152–54, 164, 174). The trial court certified Appellant's right to appeal, and Appellant filed a timely notice of appeal. (C.R.: 72–73, 76). Appellant did not file a motion for new trial. (C.R.: 1–88). This appeal followed.

## STATEMENT OF THE FACTS

At approximately 1:20 a.m. on May 7, 2017, Adriana Zetina, a manager of a U-Haul store on Ferguson Road in Dallas, Texas, was notified by the company's security team that a burglar had triggered her store's security alarm. (R.R.3: 20–22, 48–49, 57). Appellant previously worked with Zetina at the same U-Haul store. (R.R.3: 20–22, 43, 53–54). After Zetina learned from the security team that the burglar had left the store and she could safely enter, she drove there and met with responding Dallas Police

1

Department (DPD) Officer Michael Slay and his partner. (R.R.3: 50–51, 71). The burglar had fled from the store by the time the officers arrived. (R.R.3: 71). Zetina pulled recorded footage of the burglary from the store's surveillance cameras, and she and the officers watched it. (R.R.3: 23, 26–28, 59, 71–72). During Zetina's testimony, the State played the DVD recording for the jury. (R.R.3: 28; SX 1).

The recording showed the burglar using rocks to shatter the glass door entrance to the store. (R.R.3: 29, 59; SX 1). The burglar entered, exited, and reentered the U-Haul store at least five times. (R.R.3: 39–40). The recording showed the burglar wearing orange or red-colored gloves, black pants with a white stripe on the bottom portion of the leg, and a black jacket. (R.R.3: 29, 31; SX 1). It appeared to Zetina that the burglar was wearing two pairs of pants, with one layered on top of the other. (R.R.3: 35–36). Zetina testified that the jacket the burglar was wearing was a U-Haul-issued jacket; such jackets are brown or khaki-colored on the outside and black on the inside. (R.R.3: 23–25, 44–45; SX 39). Zetina brought a U-Haul jacket with her to court, which she demonstrated to the jury. (R.R.3: 24–25; SX 39). If turned inside-out, the U-Haul jacket displays a stitched black diamond pattern. (R.R.3: 25, 45–46). Zetina testified that the burglar in the recording had turned the U-Haul jacket inside out, and it was displaying the black diamond-patterned stitching. (R.R.3: 23–25, 45–46; SX 39).

Officer Slay provided similar testimony regarding the burglar's distinctive clothing. He testified that the DVD recording showed the burglar wearing a black

2

stitched U-Haul jacket that had been turned inside out. (R.R.3: 65–66, 73–76; SXS 3, 39). Officer Slay further testified that the burglar wore multiple layers of pants, including black pants with a white stripe on the bottom portion of the leg that ran from the calf to the ankle. (R.R.3: 59, 64–68; SXS 2, 3, 7, 8, 10–12). He noted that the burglar wore black shoes with a white sole. (R.R.3: 68, 79; SXS 2, 10). Finally, Officer Slay stated the burglar wore orange-colored gloves and a white cloth over his face to conceal his identity. (R.R.3: 66, 68, 72; SXS 4–6, 11–13).

After Zetina and the officers finished watching the surveillance recording, they compiled an inventory of the stolen items. (R.R.3: 72). During the five trips in and out of the store, the burglar stole money from the U-Haul cash register, locks, a drill set, hitch balls, gloves, two dollies, yellow-colored packages of Lysol wipes, a dark-colored backpack with a brown bottom, and two sets of U-Haul vehicle keys. (R.R.3: 30–40, 46, 60, 66–67; SXS 7, 9). The burglar used one of the sets of keys to flee from the store in a ten-foot U-Haul moving van. (R.R.3: 40–42).

Zetina testified that as a former employee, Appellant would be familiar with the U-Haul store and, specifically, with the organizational system of how U-Haul matches keys with vehicles. (R.R.3: 32–33). Zetina observed that as she viewed the surveillance recording, the burglar "navigat[ed] easily" through the store. (R.R.3: 38). She specifically noted that the burglar easily entered and exited the store's office. (R.R.3: 30, 39).

3

After Officer Slay viewed the recording, he alerted other DPD officers about the stolen U-Haul van and its license plate number. (R.R.3: 60, 72). Approximately two hours later, DPD Officers Amy Anderson and Christopher Slone stopped a van that displayed the same license plate number. (R.R.3: 60–61, 78, 82–86, 102–03, 106–10). The officers ordered the sole occupant, a black male who was seated in the passenger's seat, to exit. (R.R.3: 86–87, 104, 110). The man told the officers that he was the driver of the van. (R.R.3: 87, 104). Both officers identified Appellant in court as the driver. (R.R.3: 89–90, 93, 104–05, 110–11).

The State offered Officer Anderson's recorded body camera footage showing her stop of Appellant, as well as still-frame photographs of the footage. (R.R.3: 90–91, 95–96; SXS 14–22). Officer Anderson provided testimony about the recording and the still-frame photographs. (R.R.3: 90–98). She testified that Appellant said he received the van from an unknown older gentleman. (R.R.3: 105–06). She further testified that as Appellant exited the van, a dark and tan-colored jacket, similar to the black U-Haul jacket provided by Zetina and demonstrated by the State at trial, fell from Appellant's lap to the ground. (R.R.3: 88, 94, 97–98; SXS 16, 18, 20, 21, 39). Officer Anderson stated that Appellant was wearing dark-colored clothing, including dark-colored pants with a white or gray stripe at the bottom of the leg. (R.R.3: 88, 92–93, 96; SX 14). Officer Anderson noticed that Appellant had "some change" on his person and rocks in his pocket. (R.R.3: 94–95, 99–100).

4

The State also offered Officer Slone's recorded body camera footage showing his stop of Appellant, and the officer based his testimony on the recording. (R.R.3: 112–13; SX 23). Officer Slone testified that Appellant said he received the van from "some dude" at an unknown neighboring apartment complex. (R.R.3: 111–12, 120–21). The officer further testified that when Appellant exited the van, a tan-and-black U-Haul jacket, similar to the U-Haul jacket provided by Zetina and demonstrated by the State at trial, fell from Appellant's lap. (R.R.3: 114–17, 123, 124; SX 39). As Officers Slone and Anderson took Appellant into custody for possessing a stolen vehicle, Officer Slone noticed that Appellant was wearing three layers of pants. (R.R.3: 87, 115, 121). Officer Slone conducted an inventory the U-Haul van, in which he located ratchet straps, padlocks, Lysol wipes, trailer hitches, dollies, drill battery packs, and a dark-colored backpack. (R.R.3: 116–20).

Officer Slay and his partner drove to Officer Anderson's and Officer Slone's location. (R.R.3: 61, 77, 98–99, 117). Since Officer Slay had the opportunity to observe the burglary suspect on the U-Haul store surveillance recording, he quickly was able to identify Appellant as the burglar. (R.R.3: 61, 77, 99, 117–18). Officer Slay specifically testified that Appellant was wearing the same clothing as the burglar in the video—including the same black-and-white shoes and the same distinctive pants with a white stripe running from the calf to the ankle. (R.R.3: 61, 78–79). Officer Slay testified that the U-Haul van in Appellant's possession contained the same property that had been stolen from the Ferguson Road U-Haul store just hours earlier. (R.R.3:

5

61–62). Officer Slay arrested Appellant and searched him. (R.R.3: 62). He testified that Appellant was wearing several pairs of pants, just like the burglar in the surveillance recording. (R.R.3: 63, 67).

A jail intake property custodian, Dorothea Simon, testified about the property that officers seized from Appellant while booking him into the jail. (R.R.3: 125–31). Simon brought Appellant's seized property with her to trial. (R.R.3: 126–27). The State offered and the trial court admitted photographs of the property, as well as the actual physical property.[1] (R.R.3: 127–28; SXS 24–38, 40).

Simon testified that Appellant's physical property included three pairs of pants, a pair of shoes, a backpack, Lysol wipes, and an orange glove. (R.R.3: 128–30; SXS 36, 37). She explained that the pants included a black pair, a navy-blue pair, and a blue jean pair; one of the pairs displayed a gray or white stripe running from the calf to the ankle. (R.R.3: 129). Appellant's shoes were black in color with a white or gray sole. (R.R.3: 129). Simon stated that Appellant's backpack was navy-blue in color with a beige bottom. (R.R.3: 129; SX 37). She testified that the State's photographs of the black pants with the white stripe, the Lysol wipes, the navy-and-beige backpack, and the orange glove depicted the same physical items in State's Exhibit 40. (R.R.3: 129–30).

---

[1] The trial court admitted the physical property, State's Exhibit 40, for demonstrative purposes only.

6

*Response to Appellant's First Point of Error*

The State presented legally-sufficient evidence to support Appellant's conviction for burglary of a building over his claim that he is not the person who burglarized the Ferguson Road U-Haul store. The State proved Appellant committed the offense beyond a reasonable doubt, and the jury rationally found him guilty as charged in the indictment.

*Response to Appellant's Second Point of Error*

Appellant failed to preserve this issue for appellate review. Even if he preserved this issue, the trial court did not abuse its discretion in admitting photographs of Appellant's property seized at jail intake because the State did not violate a discovery order or willfully and untimely disclose the photographs. In the alternative, even assuming the trial court erred, Appellant was not harmed because admission of the complained-of photographs did not affect his substantial rights.

**ARGUMENTS**

*Response to Appellant's First Point of Error*

**The State presented legally-sufficient evidence to support Appellant's conviction for burglary of a building.**

In his first point of error, Appellant argues the State failed to prove his identity as the burglar of the Ferguson Road U-Haul store. Appellant's Br. at 3–4. He specifically complains that the U-Haul surveillance recording does not show the race,

gender, or any other identifying marks of the burglar. Appellant's Br. at 3–4. Appellant contends that even though police officers apprehended him just two hours after the burglary, as he drove the stolen U-Haul van containing stolen U-Haul merchandise, this does not prove he was the burglar. Appellant's Br. at 4–5. He argues the evidence proves he is guilty of only possessing stolen items and, thus, this Court should vacate his instant conviction and enter a judgment of acquittal. Appellant's Br. at 5. Appellant's issue has no merit.

## A. Standard of Review

When examining the legal sufficiency of the evidence, an appellate court considers the combined and cumulative force of all admitted evidence in the light most favorable to the conviction to determine whether, based on the evidence and reasonable inferences therefrom, a rational trier of fact could have found each element of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979); *Ramsey v. State*, 473 S.W.3d 805, 808 (Tex. Crim. App. 2015). This standard gives full responsibility to the trier of fact to resolve conflicts in the testimony, weigh the evidence, and draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

The trier of fact is the exclusive judge of the credibility and weight of the evidence and is permitted to draw any reasonable inference from the evidence that is

supported by the record. *Ramsey*, 473 S.W.3d at 808. The court on appeal presumes the jury resolved any conflicting inferences in favor of the prosecution and defers to that resolution. *Jackson*, 443 U.S. at 326; *Clayton*, 235 S.W.3d at 778. Direct evidence and circumstantial evidence are equally probative; circumstantial evidence alone may be sufficient to uphold a conviction so long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). The appellate court must defer to the fact finder's credibility and weight determinations. *See Jackson,* 443 U.S. at 326.

## B. Applicable Law

To obtain a conviction for burglary of a building, the State must prove that (1) the person charged with the offense, (2) entered a building not then open to the public, (3) without the effective consent of the owner, and (4) with the intent to commit a felony or theft. Tex. Penal Code Ann. § 30.02(a), (c)(1); *Garza v. State*, 841 S.W.2d 19, 21–22 (Tex. App.—Dallas 1992, no pet.).

The State must prove beyond a reasonable doubt that the defendant is the person who committed the charged offense. *Johnson v. State*, 673 S.W.2d 190, 196–97 (Tex. Crim. App. 1984). The Court of Criminal Appeals has held that "[e]vidence as to the identity of the perpetrator of an offense can be proved by direct or circumstantial evidence" as well as reasonable inferences from such evidence. *Earls v. State*, 707 S.W.2d 82, 85 (Tex. Crim. App. 1986). An eyewitness identification is not

9

required. *Id.* Circumstantial evidence is sufficient to support a conviction for burglary of a building. *Taylor v. State*, 508 S.W.2d 393, 397 (Tex. Crim. App. 1974).

The Court of Criminal Appeals has found that when no witness can identify a suspect in a burglary case, "[the] defendant's unexplained possession of property recently stolen in a burglary permits an inference that the defendant is the one who committed the burglary." *Poncio v. State*, 185 S.W.3d 904, 905 (Tex. Crim. App. 2006) (holding inference that defendant was burglar was permitted because he pawned property stolen from a burglarized home thirty minutes after the offense). Before the factfinder may draw such an inference, however, the State must first establish the defendant's possession was "personal, recent, unexplained, and involved a distinct and conscious assertion of right to the property by the defendant." *Sutherlin v. State,* 682 S.W.2d 546, 549 (Tex. Crim. App. 1984). Generally, if a defendant provides an explanation for his possession of stolen property, the record must demonstrate the explanation is false or unreasonable before the evidence to support a conviction will be deemed sufficient. *Adams v. State,* 552 S.W.2d 812, 815 (Tex. Crim. App. 1977); *Reyes v. State,* 422 S.W.3d 18, 24 (Tex. App.—Waco 2013, pet. ref'd). The false nature of the defendant's explanation may be shown by circumstantial evidence. *Adams,* 552 S.W.2d at 815. Whether a defendant's explanation for possession of recently stolen property is true or reasonable is an issue to be determined by the fact finder. *Id.*; *Marmon v. State,* 704 S.W.2d 90, 92 (Tex. App.—Dallas 1985, pet. ref'd).

10

## C. Application of Law to Facts

The cumulative force of all of the evidence presented by the State proved Appellant was the person who burglarized the Ferguson Road U-Haul store. The surveillance recording showed that the burglar used rocks to shatter the front door of the U-Haul store to gain entry. When officers apprehended Appellant, they found rocks in his pockets. Zetina and Officer Slay watched and testified about the surveillance recording. Zetina opined that the burglar could have been a former employee because the burglar knew how and where items were stored, and easily navigated the store. Appellant previously worked at the very same burglarized U-Haul store with Zetina.

Two hours after the burglary, Officers Anderson and Slone initiated a traffic stop of a U-Haul van with the same license plate number as the U-Haul that Officer Slay reported as stolen. Appellant was the sole occupant and the driver. Officers Anderson and Slone noted the stolen U-Haul contained a large amount of U-Haul merchandise, including items they learned Zetina and Officer Slay saw the suspect stealing from the store on the surveillance recording, namely several packages of Lysol disinfectant wipes with yellow lids and a dark-colored backpack with a beige bottom. Later when Appellant was placed into custody and booked into jail, officers seized a navy-blue backpack with a beige bottom, Lysol wipes, and an orange glove from him. Further, Appellant was wearing the same distinctive clothing as the burglar in the surveillance recording. Specifically, he was wearing black pants with a stripe running

11

from the ankle to the calf, multiple layers of pants, and black shoes with white or gray soles.

Zetina and Officer Slay provided corroborating descriptions of the burglar's distinctive clothing as shown on the surveillance recording. Specifically, the burglar in the recording wore multiple layers of pants, including black pants with a white stripe running from the ankle to the calf. When Officers Anderson and Slay apprehended Appellant, he was wearing black pants with a white stripe running from the ankle to the calf—identical to the pants of the burglar captured on the surveillance recording. Officers Slone and Slay observed that Appellant was also wearing multiple layers of pants, just like the burglar.

The burglar in the recording also wore a black and khaki-colored U-Haul jacket with unique stitching. After Officers Anderson and Slone stopped the stolen U-Haul van and ordered Appellant to exit, they saw a black-and-tan jacket—like the jacket the burglar in the recording wore—fall from Appellant's lap. Additionally, the burglar in the recording wore black shoes with white soles. The burglar also wore orange or red-colored gloves. Officer Slay, after having viewed the recording and Appellant in person, testified that Appellant was wearing the same shoes and clothing as the burglar in the surveillance recording. Officer Slay identified Appellant as the burglary suspect. As officers booked Appellant into jail, they seized his clothing: multiple pairs of pants, including distinct black pants with a white stripe on the leg; a black-and-tan U-Haul jacket; a pair of black shoes with white or gray soles; and an orange glove.

12

Finally, although Appellant explained to the officers that he received the U-Haul van and its contents from an unknown man at an unknown apartment complex, the jury could have found Appellant's vague and illogical explanation for his possession of the stolen property and stolen van unreasonable in light of the totality of the evidence presented. *See Adams*, 552 S.W.2d at 815. Therefore, the jurors could have reasonably inferred Appellant's guilt as the U-Haul store burglar based on his personal and recent possession of items stolen in the U-Haul burglary. *See Middleton v. State*, 187 S.W.3d 134, 139 (Tex. App.—Texarkana 2006, no pet.) (holding that appellant's possession of property stolen during burglary, three days after the offense, qualified as "personal, recent, and unexplained possession" sufficient to support the appellant's conviction). While circumstantial, the evidence inculpates Appellant as the burglar. *See Earls*, 707 S.W.2d at 85 (finding that direct or circumstantial evidence can prove the identity of a suspect).

The jury heard the testimony of all the witnesses and resolved any conflicting inferences. The appellate court must defer to the fact finder's credibility and weight determinations. *See Jackson*, 443 U.S. at 326. Reviewing all the evidence presented at trial in this case in the light most favorable to the prosecution, this Court should determine that the jury rationally found the essential elements of the charged offense beyond a reasonable doubt and found against Appellant on his identity issue beyond a reasonable doubt. This Court should overrule Appellant's first issue.

13

**Appellant failed to preserve this issue for appellate review because he did not timely object to the complained-of photographs. Even if he did preserve this issue, the trial court did not abuse its discretion in overruling Appellant's objection to the photographs. In the alternative, even if the trial court erred, Appellant was not harmed by the error.**

In his second point of error, Appellant contends the trial court erred by admitting photographs of his clothing and property that officers seized when he was booked into jail and that the trial court's admission of them harmed and prejudiced him. Appellant's Br. at 3, 6–7. Appellant's claims lack merit.

## A. Relevant Facts

The morning of trial and after the jury had been selected, Appellant's trial counsel objected to photographs offered by the State depicting Appellant's clothing and property that officers seized during jail intake. (R.R.3: 8–12). Counsel argued that despite his motion requesting discovery filed on July 21, 2017, the State untimely provided the photographs on July 24, 2017, the day before trial began on July 25, 2017. (C.R.: 31–33; R.R.3: 8–12).

In support of his objection, counsel argued that because the State's case relied heavily on Appellant's clothing and property to link him to the offense, the photographs were highly prejudicial. (R.R.3: 9, 11–12). The trial court noted, "[O]bviously he got arrested in his clothes, and that's been no surprise since he got arrested." (R.R.3: 12). The trial court then asked Appellant's counsel if the

14

photographs surprised him such that he could not defend against them or evaluate the evidence. (R.R.3: 9, 12). Counsel responded that the photographs were a surprise to him and, had he known the State possessed them, he may have pursued a plea bargain. (R.R.3: 9, 12). The trial court overruled counsel's objection and found the State timely provided counsel the photographs in response to his discovery motion. (R.R.3: 9, 11–12).

During trial, the State offered the photographs at issue as State's Exhibits 24 through 38 as follows:

> [THE STATE]: Your Honor, can I – sorry.
>
> I'm going to go ahead and offer State's Exhibits No. 24 through 38 into evidence. These are the photographs taken of the contents of these bags that are [Appellant's] property and personal items.
>
> [TRIAL COUNSEL]: No objections.
>
> THE COURT: They're admitted.

(R.R.3: 127–28). Prior to offering the photographs, the State also offered the actual physical property as evidence, which the trial court admitted for demonstrative purposes. (R.R.3: 127; SX 40). Dorothea Simon, the jail intake property manager and custodian of Appellant's property, testified at trial that the photographs accurately depicted Appellant's physical property. (R.R.3: 128).

15

## B. Preservation of Error

To preserve a complaint for appellate review, a party must have presented to the trial court a timely and specific request, objection, or motion that states the specific grounds for the desired ruling if they are not apparent from the context of the request, objection, or motion. Tex. R. App. P. 33.1(a)(1); *Layton v. State*, 280 S.W.3d 235, 238–39 (Tex. Crim. App. 2009). The Court of Criminal Appeals has held that "[a] specific objection is necessary to inform the trial judge of the issue and basis of the objection, and to allow the judge a chance to rule on the issue at hand." *Layton*, 280 S.W.3d at 239 (citations omitted). Further, the trial court must have ruled on the request, objection, or motion, either expressly or implicitly, or the complaining party must have objected to the trial court's refusal to rule. Tex. R. App. P. 33.1(a)(2); *Mendez v. State,* 138 S.W.3d 334, 338, 341 (Tex. Crim. App. 2004). The Court of Criminal Appeals has held that almost all error, even constitutional error, may be forfeited if the party failed to object. *Fuller v. State*, 253 S.W.3d 220, 232 (Tex. Crim. App. 2008). An objection is timely if a party makes it at the earliest opportunity or as soon as the grounds for an objection become apparent. *Moore v. State*, 999 S.W.2d 385, 403 (Tex. Crim. App. 1999).

As a general rule, to preserve error, a party must continue to object each time inadmissible evidence is offered. *Martinez v. State*, 98 S.W.3d 189, 193 (Tex. Crim. App. 2003); *see also Davila v. State*, Nos. 05-16-00225-CR, 05-16-00226-CR, 2017 WL 656473, at *2 (Tex. App.—Dallas Feb. 17, 2017, no pet.) (mem. op., not designated

16

for publication) (citing *Martinez*, 98 S.W.3d at 193, and holding that the appellant's single objection failed to preserve issue for appellate review). Texas courts recognize two exceptions to this rule: (1) counsel obtained a running objection, or (2) counsel requested a hearing outside the presence of the jury. *Martinez*, 98 S.W.3d at 193.

Here, Appellant argues that the trial court erred by admitting the photographs of Appellant's property and clothing. Although Appellant objected to the photographs prior to trial, Appellant failed to lodge any further objections to the evidence. Indeed, most importantly, he did not object when the State offered the evidence at issue during trial. (R.R.3: 127–28). Appellant's sole objection, therefore, was not timely made and preserved nothing for review. *See Martinez*, 98 S.W.3d at 193; *Davila*, 2017 WL 656473, at *2.

Further, Appellant neither obtained a running objection to the photographs, nor requested a hearing outside the presence of the jury to challenge the photographs at issue when the prosecutor offered them. *See Martinez*, 98 S.W.3d at 193. Under these circumstances, Appellant has failed to preserve his second issue for appellate review, and this Court should overrule it. *See Layton*, 280 S.W.3d at 239. In the event that this Honorable Court deems this issue preserved for review, the State responds to it below.

**C. Standard of Review and Applicable Law**

An appellate court reviews the trial court's decision to admit or exclude evidence under an abuse of discretion standard. *Tillman v. State*, 354 S.W.3d 425, 435 (Tex. Crim. App. 2011); *see Francis v. State*, 428 S.W.3d 850, 854–55 (Tex. Crim. App. 2014) (applying abuse of discretion standard to the trial court's decision to admit or exclude evidence where the prosecutor allegedly withheld evidence, and finding evidence willfully withheld despite the court's discovery order should be excluded). Specifically regarding claims of trial court error for failure to exclude allegedly withheld evidence, the Court of Criminal Appeals has held that extreme negligence or even recklessness by a prosecutor in failing to comply with a discovery order "will not, standing alone, justify the sanction of excluding relevant evidence." *Francis*, 428 S.W.3d at 855.

A trial court does not abuse its discretion if its ruling is within the "zone of reasonable disagreement." *Tillman*, 354 S.W.3d at 435; *Francis*, 428 S.W.3d at 855. A trial court abuses its discretion only if its decision is "so clearly wrong as to lie outside the zone within which reasonable people might disagree." *Taylor v. State,* 268 S.W.3d 571, 579 (Tex. Crim. App. 2008). A trial court does not abuse its discretion if any evidence supports its decision. *Francis*, 428 S.W.3d at 855. An appellate court should uphold the trial court's evidentiary ruling if it was correct on any theory of law applicable to the case. *See De La Paz v. State,* 279 S.W.3d 336, 344 (Tex. Crim. App. 2009). Additionally, absent a clear abuse of discretion, a reviewing court may not

substitute its own decision for that of the trial judge. *Moses v. State,* 105 S.W.3d 622, 627 (Tex. Crim. App. 2003).

Article 39.14 of the Texas Code of Criminal Procedure requires that a prosecutor produce discovery to a defendant "as soon as practicable after receiving a timely request from the defendant." Tex. Code Crim. Proc. Ann. Art. 39.14(a) (West Supp. 2017).

**D. No Error**

On July 21, 2017, Appellant's trial counsel filed a motion requesting discovery. The record does not reflect that the trial court ruled on the motion or otherwise imposed deadlines for disclosure of discovery. The prosecutor provided the photographs at issue to Appellant's trial counsel on July 24, 2017, the day before trial began on July 25, 2017. The prosecutor provided counsel with the evidence three days after he requested it.

Citing *Francis v. State*, 428 S.W.3d 850, 854–55 (Tex. Crim. App. 2014), Appellant argues that because his trial counsel filed a motion for discovery prior to trial and the State did not timely provide the photographs, the trial court should have excluded them. In *Francis*, three-and-one-half-months before trial, the trial court entered a discovery order requiring the State to provide the defense an opportunity to inspect physical evidence. *Francis*, 428 S.W.3d at 855. The prosecutor in the case did not disclose the existence of a machete to the defense, and the defense first learned

19

about the machete in court at trial where it was displayed as evidence. *Id.* The trial court nonetheless refused to exclude the machete as evidence because it determined the prosecutor's failure to disclose it was not willful. *Id.* In upholding the trial court's ruling, the *Francis* court explained that because a trial court should exclude evidence only to punish willful prosecutorial misconduct, such a sanction is appropriate only upon a finding that the prosecutor willfully disregarded the court's discovery order. *Id.*

Appellant's reliance on *Francis* is misplaced because it is distinguishable from the instant case. Here, unlike in *Francis*, the trial court did not issue a discovery order. Therefore, there was no discovery order for the prosecutor to violate. *See id.* at 859–60; *see, e.g.*, *Benedict v. State*, No. 05-15-00958-CR, 2016 WL 3742127, at *5 (Tex. App.—Dallas July 7, 2016, pet. ref'd) (mem. op., not designated for publication) (discussing *Francis* and Texas Code of Criminal Procedure Article 39.14, and finding that because the trial court did not enter an order granting appellant's motion for discovery, there was no discovery order for the prosecutor to violate). Accordingly, *Francis* provides no guidance in this case.

Furthermore, even if the trial court had granted Appellant's request and entered a discovery order, Appellant has not shown the prosecutor willfully disclosed the photographs in an untimely manner or intended to harm the defense. *See Francis*, 428 S.W.3d at 855; *see also State v. LaRue*, 108 S.W.3d 431, 434 (Tex. App.—Beaumont 2003), *aff'd*, 152 S.W.3d 95 (Tex. Crim. App. 2004) (noting an act is willful if done voluntarily and intentionally, with the specific intent to disobey the law). Here, unlike

20

in *Francis*, the prosecutor disclosed the photographs at issue in advance of trial. Appellant did not learn about them in court and at trial like in *Francis*. Appellant points to no evidence in the record that suggests the prosecutor willfully delayed disclosure of the photographs, and the State has not found any such evidence. Therefore, because the prosecutor did not commit a willful act in connection to the disclosure of the photographs, and in fact did disclose them, exclusion of them would not have served any policy of punishment under *Francis*.

Moreover, three days between Appellant's discovery request on the eve of trial and his receipt of such discovery is not an unreasonable disclosure time, such that the trial court should have excluded the photographs. The State is unaware of any authority that imposes time deadlines on the State for disclosure in such a situation, and Appellant has not provided this Court with any such authority. Indeed, Article 39.14 of the Texas Code of Criminal Procedure requires only that a prosecutor produce discovery to a defendant "as soon as practicable after receiving a timely request from the defendant." Tex. Code Crim. Proc. Ann. Art. 39.14(a); *see Kirksey v. State*, 132 S.W.3d 49, 54–55 (Tex. App.—Beaumont 2004, no pet.) (finding where trial court's discovery order did not include a deadline for disclosure, prosecutor's production of photographs immediately prior to witness' testimony was deemed timely)*; see e.g., Rendon v. State*, No. 11-14-00080-CR, 2016 WL 787150, at *2-3 (Tex. App.—Eastland Feb. 25, 2016, pet. ref'd) (mem. op., not designated for publication) (finding trial court did not abuse its discretion by admitting evidence that prosecutor

21

provided to defense on the day of trial and, in distinguishing *Francis*, noting no willful action by prosecutor). Here, the trial court did not set a deadline for disclosure and the State disclosed the evidence before trial started; therefore, the trial court acted within its discretion by finding that the State had timely provided the photographs to the defense.

Through its ruling, the trial court explicitly found the State did not commit a discovery violation and had timely responded to trial counsel's discovery request. The trial court reasonably found that trial counsel should have anticipated photographs of Appellant's clothing because Appellant had been arrested wearing the same clothes and booked into jail. Because Appellant has failed to show the State willfully disclosed evidence in an untimely manner, such that the trial court should have excluded it, this Court should find that the trial court did not abuse its discretion in admitting the photographs, and should overrule Appellant's second issue.

### E. No Harm

Even if this Honorable Court finds that the trial court erred by admitting the photographs of Appellant's clothing and personal items, Appellant suffered no harm. Because Appellant is complaining about the admission of evidence, the proper standard of review is that for non-constitutional error as provided in Texas Rule of Appellant Procedure 44.2(b), which requires that any error, defect, irregularity, or variance that does not affect substantial rights must be disregarded. *See* Tex. R. App.

22

P. 44.2(b); *Morales v. State*, 32 S.W.3d 862, 867 (Tex. Crim. App. 2000). A substantial right is affected when the error had a "substantial and injurious" effect or influence in determining the jury's verdict or when the error leaves one in grave doubt about whether it had such an effect. *Montez v. State*, 975 S.W.2d 370, 373 (Tex. App.—Dallas 1998, no pet.). "A substantial right is not affected and the error is harmless if, after reviewing the entire record, the appellate court determines that the error did not influence, or had only a slight influence, on the trial outcome." *Id.* Thus, under Rule 44.2(b), unless the error had a substantial and injurious effect or influence in determining the verdict, the error will not constitute reversible error. Tex. R. App. P. 44.2(b); *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997). When conducting a harm analysis under Rule 44.2(b), everything in the record, including evidence of a defendant's guilt, is a factor to be considered. *Motilla v. State*, 78 S.W.3d 352, 357 (Tex. Crim. App. 2002). Moreover, the Court of Criminal Appeals has held that regarding erroneous admission of evidence, any error "is cured where the same evidence comes in elsewhere without objection." *Lane v. State*, 151 S.W.3d 188, 193 (Tex. Crim. App. 2004).

Here, Appellant asserts his trial counsel would have changed his trial strategies had the State timely provided the photographs. Appellant's Br. at 7. He fails to demonstrate harm. During trial, after jail property custodian Simon discussed the photographs of Appellant's clothing, she demonstrated Appellant's physical clothing and personal property to the jurors. Counsel did not object to Simon's demonstration

23

of the evidence. As Simon testified, the State's photographs of Appellant's clothing and property accurately depicted the physical items. Pursuant to *Lane*, even if the trial court erred by admitting the photographs at issue, Appellant has failed to demonstrate harm to his case because the jurors still would have seen the physical items of evidence. *See id.* Therefore, Appellant has not established that the admission of the photographs had a substantial or injurious effect on influencing the jurors.

Moreover, a review of the entire record reveals that, while circumstantial, the entirety of the evidence of Appellant's guilt was overwhelming. As discussed in response to Appellant's first issue, above, the witnesses' testimony and still-frame photographs of the burglary and Appellant's arrest constituted sufficient evidence for the jury to find him guilty. Accordingly, even absent the State's photographs of Appellant's clothing and property, the jury would have convicted Appellant of the charged offense. Therefore, any error in admitting Appellant's photographs was harmless, and this Court should overrule Appellant's second issue.

## PRAYER

The State prays that this Honorable Court will affirm the trial court's judgment.

24

Respectfully submitted,

/s/ **Nina L. Scherach**

FAITH JOHNSON
Criminal District Attorney
Dallas County, Texas

NINA L. SCHERACH
Assistant District Attorney
State Bar No. 24100660
Frank Crowley Courts Building
133 N. Riverfront Boulevard, LB-19
Dallas, Texas 75207-4399
(214) 653-3625 | (214) 653-3643 *fax*
Nina.Scherach@dallascounty.org

## CERTIFICATE OF COMPLIANCE

I certify that this brief contains 6,008 words. This word count includes all necessary parts outlined in Texas Rule of Appellate Procedure 9.4(i)(1), and it was conducted with Microsoft Word, which was used to compose this brief.

/s/ **Nina L. Scherach**
NINA L. SCHERACH

## CERTIFICATE OF SERVICE

I certify that a true copy of this brief was served on Shara D. Saget, as appellate counsel for Darryl Paul Gamble. Service was made via eFile to Shara.Saget@gmail.com on March 26, 2018.

/s/ **Nina L. Scherach**
NINA L. SCHERACH